## JOHN WILLIS v. THE TOLEDO, ANN ARBOR & NORTH MICHIGAN RAILWAY COMPANY.

*Principal and agent—Railroad companies—Employment of porter by station agent*

1. In this case plaintiff is held not to have made a case on his own testimony; that the defendant's station agent had no authority to employ plaintiff, and that its superintendent never assented to such employment.

2. It is not for a jury to determine whether the work done by a plaintiff under the orders of a station agent, who had no authority to contract for a railroad company, was beneficial to the company, which, acting through its proper officers, had the right to determine whether or not it wanted the services of a porter at the station.

Error to Shiawassee. (Newton, J.) Submitted on briefs October 5, 1888. Decided October 26, 1888.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Lyon & Hackleman,* for appellant, contended:

1. There was no evidence of any employment of plaintiff by Davis, or of his authority to employ plaintiff, or of any particular necessity requiring the services of anybody, or that any work beneficial to the defendant was done by plaintiff; citing *Railway Co. v. Nichol,* 18 Mich. 170; *Butler v. Railroad Co.,* 60 Id. 83.

2. A corporation cannot be held to have contracted unless by such

agents or officers as have express or implied authority; citing *Lockwood v. Boom Co.*, 42 Mich. 539.

3. The fact that a party assumes to act as agent is no evidence of his power to act, but his authority must be proved as a fact; citing *Reynolds v. Ins. Co:*, 36 Mich. 131; *Meister v. People*, 31 Id. 107.

*James M. Goodell,* for plaintiff, cited no authorities.

MORSE, J. Plaintiff sued in justice's court, and declared orally against the defendant for $300 for work and labor performed. Defendant pleaded the general issue. Plaintiff recovered judgment for $50 and costs. Defendant appealed to the circuit court for the county of Shiawassee. Upon trial in that court before a jury, the plaintiff obtained a verdict and judgment for $120 and costs.

It is claimed by the defendant that the plaintiff made out no case, and that the jury should have been directed to find a verdict in favor of the defendant.

· The case, as made by the plaintiff, is substantially as follows:

He is 61 years of age, and lives in Corunna, where he has resided for 10 years. He worked in 1886 upon the grade for the defendant, and was acquainted with a Mr. Davis, civil engineer of the defendant. Plaintiff told Davis, before there was any depot or freight-house built, that he would like to get a situation with the company, and Davis said he thought he could do something for him. There was some freight on the steps of the freight-house after this first talk, and on the 25th day of October, 1886, Davis told plaintiff to see to delivering it, and look after things there, and remain until the company discharged him. No authority in Davis to employ him was shown, and this evidence was admitted, against objection, under the proposition made by plaintiff's counsel that it would be followed up by testimony showing an assent to this

hiring by Mr. Ashley, the general superintendent of the defendant.

Plaintiff delivered freight and collected pay for it until the 18th of November, 1886, when the present station agent, Mr. Northcutt, came, and received from him what he had collected; but plaintiff testifies, on cross-examination, that no freight came during this time, except one or two car-loads of lumber, which the owner unloaded himself.

When the agent came, plaintiff stated to him that he had been there attending to freight and watching the thing, and expected a situation. The agent gave him the keys. He asked the agent for the situation of porter. The agent did not agree to employ him, but said that if the company allowed him anybody he wanted plaintiff to remain. Said he would write to the company, and have plaintiff placed on the pay-roll. No price was agreed upon for his work, but plaintiff testifies that in effect the agent told him to go to work, and he would employ him as porter. Plaintiff built the fires and kept the station and freight-house in order, and handled the freight.

About 15 or 20 days after the agent came the pay car came through. Plaintiff asked the pay-master for his pay. The pay-master looked over his roll, and informed him that his name was not upon it. Ashley was there with the pay-master, as was also Davis. Plaintiff asked Ashley why his name was not on the pay-roll. Plaintiff cannot swear what Ashley said, but testifies that the effect of his answer was that it was a matter that would be looked after hereafter.

"Answered me rather short, and passed along. Just as the car was starting, I had this conversation. I had but a moment with him."

He claims, however, that at the time he told Ashley that Davis had told him to remain there until the company told him to go, and Davis thought he would get a job prior to the agent's coming there, and that since the coming of the agent he had relied on the action of the agent.

"Q. What reply did Mr. Ashley make to that?

"A. I can't say that he said anything particularly, only that he made some short reply, and turned about and left me."

Plaintiff testifies that he met Ashley afterwards, and said to him:

"Business seems to be picking up a little."

Ashley replied:

"I hope it will; there is not enough of it."

He had another conversation with Ashley upon the platform of the depot.

"I told him it seemed as though I ought to be remembered by the company. I had been there some time, and it was pretty hard work to get a living. My recollection is he didn't make make me any positive reply one way or the other."

Plaintiff did not go to the pay car but once. He testifies that he attempted to go, but the agent told him to wait until he ascertained about the matter. The agent told him he had written to the company about employing him, but he does not remember whether or not the agent told him he could be employed. "Don't remember what he did tell me about the reply." The agent did not say at any time that he was authorized to employ plaintiff. The plaintiff does not remember that he ever asked the agent if he had received any answer to his letter to Ashley as to whether he could have a job or not.

On the 2d of May, 1887, the agent discharged him, took the keys away from him, and said that if he had

known or thought that plaintiff would make any demand upon the company for pay he would not have allowed him to stay.

The station agent testified as follows:

"*Q.* What did he say to you at that time in relation to the business there?

"*A.* He said: 'You are the agent here?' I said: 'Yes, sir.' He said to me: 'You will likely want an assistant in the shape of a porter by and by,'—something to that effect. I says: 'I expect so.' He said he would like to get such a position with the company. I said I had no authority to engage any person, but that I should like to have an assistant just as soon as the company would give it to me.

"I asked him, I think, if he had any knowledge of railroad work. He said no further than he had been around the depot during the construction of the road, or something to that effect. He said he would like to stay around anyway, in the mean time, and learn the ways of the work such as was to be done, and would be the duty of persons in that position. I said I would have no objection. He said he would like to get a position, and would stay around, and find out the ways of the work, and by and by, when they would engage a man in that position, that I should recommend him, if he suited me, which he would try to do. That was about the understanding at that time.

"He stayed around, and helped put on fires mornings, and handled baggage, such as would be his duties if he were employed, and in no other way could he learn it. There was very little work to do in that line; no more than I could do; and no other hand was necessary. I was not authorized by the company at any time to employ him to assist me. I asked the company for an assistant. He kept on asking me to see about it, and see if I could not get him in. I can't remember exactly what passed, but at different times while there he kept saying he ought to have something; he ought to be employed; what he was doing there was worth something. I kept telling him the company said the business would not warrant the employment of an assistant there, and just as soon as it would I would try and get him a situation.

"He went to the pay car apparently every time it came

along, but I expected he was seeking some pay he had coming to him. He said he had been in the employ of the company before that; I understood in construction work. I was not aware he was seeking or looking for anything for his current work, or anything of that kind. I didn't tell him not to go to the pay car, I would· see he got his pay, or anything of the kind. Mr. Goodell, his counsel, wrote the general manager on the subject of his pay. The manager wrote me asking what it meant, with the letter attached. I returned it, and told him. I guess he wrote Goodell, and this suit was commenced. Willis turned over no money at any time to me."

That he wrote two letters to Ashley, one on the 19th of February, 1887, and one on the 31st of March, 1887, asking that he might place an assistant upon the payrolls; to both of which Ashley replied, in substance, that the earnings of the station would not warrant an assistant, but when they did he should have one. He claims that the plaintiff saw both letters and the answers.

Davis swears that he never employed plaintiff, and had no authority to do so; that he told him he had nothing to do with employing help at the stations. He asked Davis to speak a good word for him, and this was his reply to him. Ashley was not sworn.

We do not think the plaintiff made out a case upon his own evidence. Davis had no authority to employ him, and Ashley never assented to such employment. It is not shown that Ashley knew he was working about the station in any capacity.

The circuit judge charged the jury that the plaintiff must prove that he did the work upon an express agreement with the agent of the railroad company, and that such agent had authority to employ him, or other help necessary to do the work of the company, in order to recover; and, further:

"A corporation—and the rule applies to all corporations—can only act in its daily business through its agents.

Whatever is necessary to be done, whatever help is necessary to do its business successfully, and promote and advance the interests of the corporation, the agent in charge would have the right to procure. But the agent would have no authority to employ a helper to do what he, the agent himself, had been employed to do. He could not employ help to relieve himself from the labor of his employment, wholly or in part, if he were capable of performing it himself. It is only when the business of the railroad company or other corporation cannot be successfully performed by its selected agent, and when there is actual necessity growing out of the increase of business which the agent cannot perform himself, that the company would be liable for the work of another, from necessity, employed by the agent, in the necessary business of the company, but not for the convenience of the agent, in order to relieve him of doing what he was employed to do himself.

"If you find that there was no necessity existing for the employment of additional help to do the work of the railroad company at this office, then the agent had no authority to employ such help, and your verdict would be for the defendant; or if you find that the plaintiff voluntarily worked there with the understanding with the agent that he would work and assist the agent in doing the agent's work, and that the agent should recommend him to a position by appointment from the company, then the plaintiff could not recover. That would be the contract of the agent, and not the contract of the railroad company. If the agent was capable of doing the work himself, there would be no necessity for employing somebody to help him do that which he had been employed to do himself, and the agent would have no right on behalf of the corporation, and it would not bind it. If you find that Davis employed him to do any particular work which was necessary to be done, and which was of benefit to the company, he would be entitled to recover what such services were reasonably worth."

It will be seen that the question was not put to the jury upon the assent of the superintendent to the employment of the plaintiff, or the fact of his work being done within the knowledge of that officer of the corporation. But the liability of the defendant was placed upon the

broad ground that if the work performed was necessary to be done, and of benefit to the defendant, then either the agent at the station or Davis had the right to employ plaintiff, and the worth of his services under the employment was chargeable against the railroad company.

In this the court was clearly wrong. Neither Davis nor the station agent had any authority to employ plaintiff. It is not for a jury to determine whether the work done by plaintiff, under the orders of persons who had no authority to contract for the railroad company, was necessary or beneficial to such company. The defendant, acting through its proper officers, had the right to determine whether or not it wanted the services of a porter or assistant at this station. The authority of Davis and the station agent was expressly negatived by the undisputed evidence in the case.

The judgment of the court below is reversed, and a new trial granted, with costs.

The other Justices concurred.