## ERSKINE v. CHINO VAL. BEET–SUGAR CO.

(Circuit Court, S. D. California. December 20, 1895.)

No. 655.

**1. INJURY TO EMPLOYE—DEFECTIVE APPLIANCE.**

An employer is not liable for injuries to an employé resulting from a defective appliance unless he had actual knowledge of the defect, or by ordinary care could have obtained such knowledge, in time to prevent the injury.

**2. SAME.**

An employer is not liable for injuries to an employé caused by a defective rope when there was nothing in the appearance of the rope to suggest a defect.

**3. SAME—CONTRIBUTORY NEGLIGENCE.**

An employé injured through defects in a rope, while engaged in cleaning windows, is guilty of contributory negligence if he voluntarily chose to do the work by suspending himself by rope and tackle at a high elevation outside the building, when, as he knew, he might have done it from the inside of the building without assuming such risk.

**4. SAME—INSPECTION OF APPLIANCES.**

If an employé, injured by the breaking of a rope in a rigging appliance, had at the time charge of all the rigging, ropes, and tackles of his employer, and was charged with the duty of inspecting them, and he selected the rope and tackle used at the time of the accident, he cannot recover for his injuries.

Action by Maria S. Erskine, executrix of the last will of Wilbur F. Erskine, against the Chino Valley Beet-Sugar Company, a corporation. On motion by defendant for peremptory instructions.

Plaintiff, as executrix of the last will of her late husband, Wilbur F. Erskine, deceased, brought this action to recover of the defendant damages for the death of said Erskine. Upon the trial of the case, and at the close of the plaintiff's evidence, the defendant moved the court to instruct the jury to return a verdict for the defendant. The proof showed that deceased was killed on November 9, 1894. At that time he was in the employ of the defendant, and had been continuously for several years prior thereto, with the exception of an interval of about two weeks, between October 15 and November 1, 1894. At the time of the accident he was engaged in cleaning the windows of defendant's factory, and, for this purpose, was suspended, on the outside of the building, by a rope and attached appliances, at an elevation of about 50 feet from the ground. While the deceased was thus suspended, the rope broke, and, in consequence thereof, deceased fell to the ground, and was killed by the fall. The rope, at the place where the break occurred, was badly decayed, although it was not discolored; nor was there anything in its appearance before it broke, to create even a suspicion that it was defective. The other pertinent facts are indicated in the opinion of the court.

S. O. Houghton, for plaintiff.

Graves, O'Melveny & Shankland, for defendant.

WELLBORN, District Judge. The grounds upon which the defendant moves the court for peremptory instructions, although more numerously stated in the motion itself, may be comprehended under three heads, as follows: First, that the evidence fails to establish the representative capacity of the plaintiff, or, in other words, that she is the duly appointed and qualified executrix of the last will

of the deceased, Wilbur F. Erskine; second, that the evidence fails to show negligence on the part of the defendant; third, that the evidence does show contributory negligence of the deceased.

1. With reference to the first of these grounds, it is only necessary to observe that I see no reason to depart from the ruling, made in the early stage of the trial, permitting the probate record from San Bernardino county to go to the jury. On the contrary, further reflection satisfies me of the correctness of that ruling.

2. The second ground of the motion, that the evidence fails to show that the defendant was negligent, suggests the inquiry: What is the duty of an employer, as to the instrumentalities whereby the servant performs his work? And, next, was this duty discharged by the defendant in the present case? With reference to the first branch of the inquiry, the rule of law has been often and authoritatively declared to be that an employer is not to be held as guarantying or warranting the absolute safety of the instrumentalities which may be provided for the use of the employé, but it is the duty of the employer to exercise ordinary care in furnishing sufficient and safe materials, machinery, and other means by which the service is to be performed, and to keep them in repair and order, and to make inspections, tests, and examinations at the proper intervals. The servant does not undertake to incur the risks arising from negligence in providing suitable and safe material or other instruments with which he is to work. His contract implies that, in regard to these matters, his employer will exercise due care in making adequate provision that no danger shall ensue to him; and this duty the master cannot delegate to a servant, so as to exempt himself from liability for injuries caused to another servant by its omission. It will be observed from this language, however, that it cannot apply when the injured person is himself the servant to whom the master delegated the duty whose omission caused the injuries. In the application of this rule, where injury has resulted from a defective appliance, the courts have generally, if not uniformly, held that, in order to make the employer responsible, plaintiff must prove, either that the employer had actual knowledge of the defect, or by the exercise of ordinary care could have obtained such knowledge in time to have prevented the injury. In the present case, it is not claimed that the defendant had actual knowledge of the defective rope, but plaintiff insists that the defect itself was of such a nature as to charge the defendant with negligence. Is this position tenable? I think not. While it is true that negligence may sometimes be implied from a defective appliance, yet, in order to this result, the defect must be patent and obvious, and a failure to discover it the result of carelessness. Such were the facts in the case of Mateer v. Railway Co. (Mo. Sup.) 15 S. W. 970, cited and relied on by defendant. This is evident from the second paragraph of the syllabus of the case, which is as follows:

"Where * * * a brakeman is injured, while mounting the car, by the pulling out of a bolt which held a round of the ladder in place, the company is liable if, by the use of ordinary care, it could have discovered the defect, and negligence may be inferred from the nature of the defect."

That the negligence in that case was the failure of the defendant to discover a patent defect is further shown by the statement of facts, and also by the comments thereon of the court in its opinion. For instance, the court says:

"The nature of the defect itself, shown by the testimony in this case, was such as to warrant, fairly, an inference of omission of such care. If it be conceded that the omission was ascribable to some car inspector of defendant, it yet furnishes no barrier to plaintiff's action. It has been often ruled that, in regard to such inspections, the car inspector is a representative of the master, and not a fellow servant of the train operative."

I repeat, then, that in the case just referred to the inference of negligence from the defect was indulged because the defect was so obvious to the eye as to have been discoverable by a reasonable inspection. Nothing of the sort is claimed in the pending case. On the contrary, the defect was not open to visual observation, but latent. The rope was not discolored, nor was there anything whatever in its appearance to suggest a suspicion of its unsoundness. Under these circumstances, the rule is well settled that negligence will not be presumed merely from the defect, but, to make defendant liable, there must be other and affirmative proof of negligence. No such proof has been offered in this case. All that is shown, even remotely bearing upon this question, is that some of the ropes were kept in a store and others in the boiler room; but there is no evidence whatever that these were unsafe or improper places for such purposes.

3. While this ruling disposes of the pending motion, yet since the question of contributory negligence has been largely discussed by the attorneys for the respective parties, and since I have formed decided opinions thereon, I think it not inappropriate for me to announce them. The particulars wherein defendant insists that the negligence of the deceased contributed to his injuries are these: First. That he could have performed the service in which he was engaged—that is, cleaning the windows of the factory—from the inside of the building, without resorting to the hazardous method of suspending himself by rope and tackle at a high elevation on the outside of the building; that the former method of doing the work was practicable and safe, and the latter hazardous; that the deceased, without any direction from the defendant, but after having been warned of its dangers, voluntarily selected the latter method, and therefore was responsible in law for his injuries. This position, it seems to me, is well taken. Second. Defendant urges, as another ground of contributory negligence, that the deceased had equal means with the defendant of ascertaining the defective condition of the rope. This ground is closely related to, and may be considered in connection with, the third, to which I now pass. Third. Defendant further insists that, if it could be claimed that the defect in the rope was of such a nature that, by the exercise of ordinary care, the defect could have been discovered, yet upon the deceased devolved the duty of making such inspections as were necessary, and therefore any omission in this respect was the negligence of the deceased. With reference to the immediate connection of the de-

ceased with the preparation of the rigging appliance whose defective condition resulted in his death, one of the plaintiff's witnesses, Abplanalp. testifies that, on the 8th of November, the day before the accident, he was working in the defendant's boiler house, where the ropes were kept, and that he saw the deceased, Capt. Erskine, there that day, "fixing up a line of rigging to wash windows," and that "he was engaged at it quite a while," and that the rigging he then fixed up was the rigging used by him at the time of the accident. Besides this testimony of Abplanalp, all the evidence in the case is to the effect that the deceased, for many years, was foreman of the defendant's rigging gangs, that he had charge and control of all the ropes, tackle, and other hoisting appliances about the defendant's factory, and that it was his duty to inspect them. Such is the express testimony of Mr. Sailer. Not only is his testimony undisputed, but it is corroborated by that of all the other witnesses who have spoken to the point. It is true that one of the witnesses, Mr. Woodbury, testified that, from February to April, 1894, some special machinery was placed in the factory, under the superintendence of a Mr. Ordway, and that the deceased assisted in this work. Woodbury's testimony, however, shows clearly that Ordway was sent out as an expert, from the manufacturers of the machinery, to put it in position, and that, so far as ropes and tackle and other hoisting appliances were used in connection with the work, the same were under the direction of the deceased. The testimony of Woodbury, therefore, is only confirmatory of the testimony, already referred to, of Mr. Sailer. I repeat, then, that among the prominent and undisputed facts of the case are these: That the deceased, on the day before the accident, selected the ropes and tackle and put together the hoisting appliances used by him at the time of his injuries; that he had employed these appliances for the same purpose on the day before his death; and, furthermore, that the deceased, by virtue of his employment for a long period of time at the factory, had charge of all the defendant's rope and tackle and hoisting appliances, and that it was his duty to inspect them. From these facts, two conclusions inevitably result, namely: That the deceased had equal means of knowledge with the defendant as to the defect in the rope; and, further, if there was any negligence in not discovering said defect, such negligence was the negligence of the deceased. The fact that, for a period of two weeks, from about the 15th of October to the 1st of November, the deceased was out of the defendant's employ, does not, I think, avoid the conclusions just stated.

I am clearly of opinion that a verdict for the plaintiff, if returned by the jury on the evidence which has been adduced, could not be permitted to stand, and the defendant's motion for peremptory instructions is allowed.