GEORGE WAGEN v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

May 31, 1900.

Nos. 12,060—(146).

**Railway—Injury to Volunteer Servant.**

A person who voluntarily assumes to act as a baggage man on a railroad train cannot recover for injuries received by defective appliances.

**Same—Notice to Defendant.**

Evidence examined, and *held* that the acts of plaintiff were not of such continuous, definite, and prominent character as to imply notice of and acceptance of such services by defendant.

**Verdict not Sustained by Evidence.**

*Held*, that the evidence does not justify the verdict.

Action in the district court for Blue Earth county to recover $30,000 damages for personal injuries. The case was tried before Severance, J., and a jury, which rendered a verdict in favor of plaintiff for $8,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Albert E. Clarke*, for appellant.

*Brown & Abbott*, for respondent.

[1] Reported in 82 N. W. 1107.

LEWIS, J.

This action was brought by plaintiff against defendant to recover damages alleged to have been caused by a defective handhold on a baggage car giving way, thus throwing plaintiff from the car while in motion; the plaintiff claiming to be discharging the duties of train baggage man. A verdict was returned for the plaintiff in the trial court, and defendant appeals from an order denying its combined motion for judgment notwithstanding the verdict or for a new trial. It is necessary to consider only one question, viz. was the verdict justified by the evidence?

Appellant denies that the respondent was in its employ at the time he received the injuries, and insists that, if he was injured as claimed, he was at that time acting as a mere volunteer; the relation of master and servant in no sense existing between himself and the defendant. In the discussion of this question we shall assume that the so-called Wisconsin, Minnesota & Pacific Railroad was operated by defendant, and a part of its system of railway. In order that the case may be properly understood, it will be necessary to state, in substance, the evidence relied upon by respondent.

The plaintiff testified that he had been employed by defendant for about nine years as baggage man at defendant's station in Mankato; that he was under the control of the station agent; that it was the practice of defendant to run Sunday excursions from time to time from Mankato to a point near Waterville, some thirty miles east on defendant's line. The trains for this purpose were made up at Mankato, consisting of a few passenger coaches and a baggage car, and a freight crew was employed to take out the train. The first one of these excursions took place in September, 1896. Respondent went upon this trip, and acted as baggage man in handing bundles out to the people. There was no baggage, but on the return he checked bicycles which were received at Waterville. Says he stood in the door, ready to receive baggage if there had been any. During 1897 there was an excursion to St. Paul, and plaintiff says he took his position as before, and acted as baggage man, taking care of all the baggage offered. On this trip he says he wore no uniform, and did not return with the train from St. Paul to Waterville. Two other excursions took place to Water-

ville in 1897, at which plaintiff says he acted in a similar capacity.

On August 28, 1898, an excursion was arranged for St. Paul and Minneapolis, and plaintiff says the train was made up of six or seven coaches and a baggage car; that when the train was drawn up to the depot he swept out the cars, and placed ice in the water casks. When the train was ready for passengers, he took his position at the door of the baggage car, and received and checked two bicycles. Says he took along baggage checks for use on the trip. Took on a bicycle at a station, and upon reaching Waterville took on the newsboy's chest. Says that he stood at the door at every station, ready to receive baggage; that the train master saw him in the baggage car, and rode with him part way to Minneapolis; that he helped to light up the lamps on the way home, at the conductor's request. Says the train master noticed his uniform on the way back, and asked him if he would like to be a brakeman. Plaintiff had on a fireman's uniform, with a common railroad cap. He thought the trainman saw him acting as baggage man. Admits that he had secured a pass for the trip for himself and wife, and that the conductor took it up on the way up, and that it was cancelled. Plaintiff's account of the accident is as follows: At a point about two miles from Waterville, on the return trip, he opened the door, to see if the train was approaching a station, and took hold of the iron rod, which runs along the side of the car over the door, and leaned out to look forward; that the screws which held the rod pulled out, and he fell out of the door, and was injured.

Plaintiff states that the station agent at Mankato told him to go upon that train as baggage man. No baggage man was provided for these excursions, and the crew consisted of a conductor, engineer, fireman, and two brakemen. It was a part of plaintiff's duties, as helper at the station, to sweep out and provide ice. It does not appear from plaintiff's statement that either the conductor, or train master, or any one else with authority, employed him to go upon the train, or to act as baggage man. The agent at Mankato had no such authority. He was not dressed in a railroad uniform. The amount of baggage handled did not require such continuous service as would be likely to attract the attention of the conductor and train master. The conductor and train master testify that

they had no knowledge that plaintiff was acting as train baggage man; that they did not see him take his place at the door of the car, or assume to perform any such duties. It also appears from the evidence that the baggage car in question was what is known as a "combination car," one end being used for baggage and train supplies, tools, etc., and the other end filled up with regular coach seats, and generally used as a smoking compartment. This car was provided with benches in the baggage end, to be used by passengers, and was utilized on this occasion, because there was a shortage of coaches.

If the station agent had no authority to direct plaintiff to go upon the train in the capacity of baggage man, he cannot recover, conceding that defendant was negligent in reference to the handhold, unless the relation of master and servant arose by implication. Church v. Chicago, M. & St. P. Ry. Co., 50 Minn. 218, 52 N. W. 647; Willis v. Toledo, 72 Mich. 160, 40 N. W. 205. If the plaintiff volunteered to check the bicycles and handle bundles, and was injured while so engaged, defendant is not liable, subject to the above exception. Church v. Chicago, M. & St. P. Ry. Co., supra; Evarts v. St. Paul, M. & M. Ry. Co., 56 Minn. 141, 57 N. W. 459. Plaintiff admits this to be the law, and the court so instructed the jury. But it is argued that the defendant knew that plaintiff was acting as baggage man on that train, and permitted him to so act, and accepted his services, and the relation of master and servant became established by the conduct of the parties. Some attempt was made to show that the conductor and train master saw and knew what plaintiff was doing, and assumed to direct him, but the only positive statement is that the conductor ordered plaintiff to light some of the lamps. It does not appear that even this was the duty of a train baggage man. The conductor and train master were the only persons who had authority to direct the movements of the train, and there is no evidence that they had knowledge that plaintiff was acting as he claims.

Taking the view of the evidence most favorable to the plaintiff, we are of the opinion that the plaintiff was a mere volunteer, acting without authority, and that such acts were not of such continuous, definite, and prominent character as to imply that the defend-

ant had notice of the same, and accepted such services. In other words, the services performed by plaintiff were not sufficient to raise by implication the relation of master and servant.

Order reversed, and new trial granted.