THOMPSON v. CHICAGO, M. & ST. P. RY. CO.

Finding on conflicting evidence will not be disturbed on appeal.

An employe assumes the risk of doing his work in a hazardous way, where a safe method is provided, as where a railway employe walks around a narrow ledge several feet above the ground on a water tank when he could reach his objective point in safety by using a ladder provided.

While generally an employer is not liable for injury resulting from unauthorized use of machinery or appliances, a railway company is bound by long acquiescence in use of a ledge on a railway water tank by employes in reaching the water gauge thereon.

Promise to repair a defect does not release an employe from the duty to use reasonable care for his own safety.

Whether a railway employe injured in falling from a ledge on a water tank 18 feet above the ground was guilty of contributory negligence **held**, under the evidence, a jury question.

(Opinion filed June 28, 1911.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Andrew Thompson against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 26 S. D. 296, 128 N. W. 809.

*J. D. Elliott* and *William G. Porter,* for appellant.

Plaintiff used the water-board for a foothold, a purpose for which it was not intended. The dangerous method employed by plaintiff in reaching the guage was his own choice and he assumed the risk of doing his work in a hazardous way. National Fire Proofing Co. v. Andrews, 158 Fed. 294; Crookston Lumber Co. v. Boutin, 14 Fed. 680; Norris v. Duluth S. S. & A. Ry. Co., 108 Fed. 747; Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed 529; Erskine v. Clime Valley Beet Sugar Co., 71 Fed. 270; Shields v. N. Y. C. & H. Ry. Co., 133 N. Y. 557; McConnell v. Morse Iron Works & Dry Dock Co., 187 N. Y. 431. All that is required of the employer is, that he furnish appliances sufficient

for the purpose for which they are to used. Goldbrick v. Metcalf, 18 N. Y. Supp. 169, Aff'd. 144 N. Y. 630, 39 N. E. 494; Felsh v. Allen, 98 Mass. 575.

*Krause & Krause,* for respondent.

The plaintiff received his injuries while attempting to discharge a duty imposed upon him by the defendant, in the manner defendant had directed—to use "it as he had been doing" until the repairs could be made, and the "two weeks" within which those repairs were promised to be made had not then elapsed. The plaintiff is entitled to recover under the facts proven. Homestake Mining Co. v. Fullerton, 69 Fed. 923; Hough v. Ry. Co., 100 U. S. 213; Dells Lumber Co. v. Erickson, 80 Fed. 257; Stephensen v. Duncan, 41 N. W. 337; Green v. M. & St. L. Ry. Co., 17 N. W. 378; Rothenberger v. Milling Co., 59 N. W. 531; Olsen v. Pike, 120 N. W. 378; Eureka Company v. Bass, 60 Am. Rep. 152; Herbert v. N. P. Ry. Co., 13 N. W. 349 Umstead v. Elevator Co., 122 N. W. 390; Yerkes v. N. P. Ry. Co., 88 N. W. 33; Missouri Furnace Co., v. Abend, 107 Ill. 44; Lytle v. Ry. Co., 47 N. W. 571; Huhn v. Mo. Pac. Ry. Co., 92 Mo. 440; Rice v. Eureka Paper Co., 174 N. Y. 385; Hawley v. Northern City Ry. Co., 82 N. Y. 370; Laning v. Ry. Co., 49 N. Y. 521; Chapter 117, 1909 Sess. Laws of S. D.

SMITH, P. J. Action for personal injury. The complaint alleges that the defendant maintained a water tank near the city of Dell Rapids for the use of its engines; that, to reach and repair the water gauge thereon, it was necessary to ascend a broken and rotten ladder permanently fixed to the opposite side of the tank, and thence to crawl around to said gauge on a narrow projection around the lower end of the elevated tank, which projection was about 18 feet above the ground; that this was the only means provided for reaching the water gauge; that this projection was dangerous and unsafe by reason of its decayed and unstable and slippery condition and its slant downward, and because of defendant's negligent failure to provide a railing or other means of support for one passing around such projection to repair the water gauge; that more than three weeks prior to the accident

plaintiff informed his superior intrusted by defendant with authority to remedy the defects mentioned, that such defects existed, and requested that they be remedied; that said superior promised plaintiff to remedy the defects very soon, and instructed and directed plaintiff in the meantime to continue using said tank, water gauge, and footboard in their then existing condition; that plaintiff, relying on said promise and believing that said defects would be so remedied, continued to perform his duties and attend to said water gauge; that on November 30, 1908, the water gauge was out of order, and plaintiff, in compliance with defendant's instructions, attempted to reach the water gauge by passing around said projection or footboard, but by reason of the defects and dangerous condition thereof, and without any fault on his part, fell therefrom to the ground and was injured. The defendant denied generally and specifically the matters alleged in the complaint, and alleged that, if any injuries were sustained by plaintiff, they were caused by his own negligence and want of ordinary care; that the plaintiff had been for a year and nine months prior to the time of said accident employed as section foreman at the city of Dell Rapids, and knew all the conditions of defendant's premises, particularly of the water tank and appliances used in connection therewith, and knew the dangers and hazards incident to his employment, and particularly those arising from repairing the water gauge, and that the risks and hazards incident thereto were voluntarily assumed by him. A jury trial resulted in a verdict and judgment for plaintiff, and from the judgment and an order overruling his motion for a new trial defendant appeals.

There are numerous assignments of error, but the one chiefly relied upon in appellant's brief is that the evidence is insufficient to sustain the verdict and judgment. Under this assignment, appellant recites some 20 particulars in which the evidence is claimed to be insufficient. The whole gist of its contention is contained in the statement in appellant's brief that plaintiff "could not have reached the jury without establishing the promise of the defendant to make repairs, and that to stay in court he was compelled to add to the true facts, the alleged promise, which was, in fact, fictitious." Appellant's contention in its brief is that

the alleged promise was so evidently a fabrication that the verdict should have been set aside. On the trial it was admitted by the defendant that one Schumacher was chief carpenter of defendant's company for that division, and had supervision of the construction and repairs of water tanks. On the trial plaintiff testified, in substance, that within three weeks prior to the accident he called Schumacher's attention to the fact that it was coming the time of year when fire was required to keep the tank from freezing; that a stave over the door ·leaked; that the water dripping on the gauge freezes and causes it to stick, and the water dripping on the extension board freezes, making it unsafe; and that in passing around the tank on this extension board there was nothing to hold on to. Plaintiff testified: That he said to Schumacher: "I used it last winter at the risk of my life, and I will not this winter. It is dangerous." That Schumacher looked at it, and said: "Yes; it does look pretty risky, and not safe, but we have the material for a new tank. I will have the crew up here pretty soon to erect a tower for the windmill, and, when they come up, I will have that crew fix something safe where you can get a handhold around there; something you can hang on to there, and in the meantime you must use it as you have been doing." To which plaintiff replied: "I don't like to do that. It is risky with the wind blowing and the ice there, and even in the best of weather it is unsafe to go round it." To which Schumacher replied: "The company is depending upon you to keep water in that tank to forward the movement of their trains, and, if you don't do it, you know what you get. It means 30 days for you. You will have to see to it as you have been doing."

[1] Appellant's contention apparently is that this entire conversation was denied by Schumacher, and the issue of fact thus raised submitted to the jury upon instructions presumptively correct, as appellant has failed to object to or criticise them in its brief. The jury found the truth to lie with the plaintiff, and, on a review of the evidence on the motion for a new trial, the trial court declined to disturb the verdict. Under the well-settled rule, we cannot do so at this time. We must therefore assume the facts to have been as testied to by plaintiff.

[2] On the trial appellant sought to show that it had provided a portable ladder for use at the water tank by means of which plaintiff might have reached the water gauge; that by means of this ladder access to the gauge was easy and safe; that plaintiff chose the hazardous, instead of the safe, method, and thereby assumed the risk. The legal proposition contended for by appellant is sustained by the authorities. Erskine v. Chine-Val. Beet Sugar Co. (C. C.) 71 Fed. 270; Shields v. N. Y. C. Ry. Co., 133 N. Y. 557, 30 N. E. 596; McConnell v. Morse Iron Works, etc., Co., 187 N. Y. 431, 80 N. E. 190, 10 L. R. A. 419; Nat. F. P. Co. v. Andrews, 158 Fed. 294, 85 C. C. A. 526; Crookston Lumber Co. v. Boutin, 149 Fed. 680, 79 C. C. A. 368; Morris v. Duluth, etc., Ry. Co., 108 Fed. 747, 47 C. C. A. 661; Gilbert v. Burlington, etc., Ry. Co., 128 Fed. 529, 63 C. C. A. 27. At the trial plaintiff testified, in substance, that no such ladder was furnished during the time of his employment there, and Michael Anthony, who for many years had been the section boss at Dell Rapids, and had charge of this water gauge while in such employment, was called as plaintiff's witness, and testified that he had never known of a ladder furnished for that particular purpose. The cross-examination of plaintiff's witnesses and the evidence of other witnesses who testified on the subject of this ladder was of such character as to present an issue of fact as to whether there was a ladder available for use at the time of the accident, or whether in fact a ladder had ever been provided or kept there for the purpose claimed. The question was fully submitted to the jury upon a clear and concise statement of the rules of law properly applicable thereto, in substance and effect the same as contended for by appellant. The finding of the jury was adverse to appellant upon this issue, and under the well-settled rule we cannot disturb the verdict.

[3] Appellant further contends that in reaching the water gauge plaintiff used the narrow projection or footboard round the lower edge of the tank for a purpose for which it was not intended. The contention is that this projection was designed as a water shed, and not a foothold for use in passing round the tank. The rule seems to be well settled that where a servant

undertakes to use machinery or appliances for purposes for which they were not designed, and for which the employer had no reason to suppose they would be used, the employer is not responsible for injuries sustained by the servant. Kauffman v. Maier, 94 Cal. 269, 29 Pac. 481, 18 L. R. A. 124; Felch v. Allen, 98 Mass. 575; McGoldbrick v. Metcalf, 144 N. Y. 630, 39 N. E. 494; Jayne v. Sebewaing Coal Co., 108 Mich. 242, 65 N. W. 971; Guenther v. Lockhart, 16 N. Y. Supp. 717; Cahill v. Hilton, 106 N. Y. 513; 13 N. E. 339; Wagen v. M. & St. L. R. Co., 80 Minn. 92, 82 N. W. 1107; Schmidt v. Leistekow, 6 Dak. 386, 43 N. W. 820. As we have observed, the verdict of the jury in response to appellant's claim that a portable ladder was furnished for use in reaching this water gauge is a finding, in effect, that no such ladder was furnished or was available at the time of the accident. In addition to this the evidence quite conclusively shows that this projection or so-called footboard at the base of the water tank had been used by defendant's employes for the purpose of reaching this water gauge, perhaps not exclusively, but at least during a very large share of the time since 1881, when the tank was constructed. And, even if it be conceded that in the original construction of the tank this water board was not designed to afford a means of reaching the water gauge, the long acquiescence in its use by employes with full knowledge is a sufficient answer to this contention. Even though not originally intended for that use, the appliance was one which might be, and was in fact, so used by its employes. If the appliance were such that the employer had no reason to anticipate it would be used for a purpose not intended, a different question might be presented. But, where the employer with full knowledge acquiesces in a use, it may well be considered that it was authorized and intended.

[4] It is doubtless true as contended by appellant that the promise to provide some safe method of reaching the water gauge did not release plaintiff from the necessity of exercising reasonable care for his own safety in performing the service. Crookston Lumber Co. v. Boutin, supra.

[5] But whether plaintiff did exercise such care was a question of fact for the jury. It is conceded that plaintiff knew the

place was slippery and dangerous, but the evidence is conflicting as to whether there was a gale of wind which rendered the act wholly imprudent at the time the accident occurred. The question of plaintiff's negligence or want of prudence in making the attempt under existing conditions was submitted to the jury and the issue found against appellant. These issues were clearly summed up by the court and placed before the jury in the following language: "It is necessary that the plaintiff, in order to recover, satisfy you by a preponderance of the testimony that there was no ladder there; that there was no safer way to perform that duty; that it was his duty to release this gauge and take care of the gauge; that he went up the only way that was provided; that he acted without negligence upon his part, with due care, and on an occasion that it was proper for him to do it, and was injured notwithstanding that exercise of good care. And, further, if the wind was blowing at such a rate that a reasonably prudent man would know it was dangerous to attempt to perform that duty at that time, then he should not do it at that time." A full and careful consideration of the issues, the evidence, and the charge of the court satisfies us that we cannot disturb the verdict, and that no reversible error appears in the record.

The judgment and the order denying a new trial are therefore affirmed.