DeBOOD, Respondent, v. PAY, Appellant.

(157 N. W. 307.)

(File No. 3801.   Opinion filed April 11, 1916.   Rehearing denied May 27, 1916.)

**Master and Servant—Injury to Construction Foreman—Walking on Truss Chord—Assumption of Risk.**

In a suit to recover damages for death of an experienced carpenter, foreman of construction on a building, who fell from the bottom chord of a truss along which he was walking to pass from one side of the building to the other in the course of giving instructions, and who with full knowledge of apparent danger chose to adopt such method instead of going down a ladder and crossing the floor and going up a ladder on the other side, there having been removed from beneath the chord a staging built with lumber afterwards used, pursuant to an arrangement between the carpenter and the general superintendent of construction, in construction of the next chord, held, that the carpenter assumed the risk of crossing on the chord, he not having been performing work on the truss at the time; that the doctrine of furnishing a safe place to work has no application to the case; and his representative could not recover.

Appeal from Circuit Court, Minnehaha County.   Hon. Joseph W. Jones, Judge.

Action by Mucie DeBood, as administratrix of the estate of Peter DeBood, deceased, against A. K. Pay, to recover damages for loss of life of the plaintiff executrix's decedent.   From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Judgment and order reversed, and cause remanded for a new trial.

*Boyce, Warren & Fairbank,* for Appellant.
*Parliman & Parliman,* for Respondent.   .

Appellant cited: Armour v. Hahn, 111 U. S. 313, 28 L. Ed. 440; Beique v. Hosmer, 48 N. E. 338 (Mass.); American Bridge Co. v. Seeds, 75 C. C. A. 407; McLean v. Cole, 55 N. E. 458; Brown v. Connors, 135 N. W. 857; Citrone v. O'Rourke Engineering and Construction Co., 19 L. R. A. (N. S.) 340, and note;

Roots Company v. Meeker, 73 N. E. 253; Thompson v. C., M.
St. P. Ry. (S. D.) 132 N. W. 158; Peffer v. Cutler, 53 N. W.
508; McElwaine-Richards Co. v. Wall, 76 N. E. 408 (Ind.)

Respondent cited: Perreault v. Wisconsin Granite Company,
32 S. D. 275; Pigford v. Company, 44 L. R. A. (N. S.) 865;
Shaw v. Company, 59 S. E. 676; Tanner v. Company, 53 S. E.
287; Avery v. Company, 60 S. E. 646; Deserant v. Company, 178
U. S. 409; Murphy v. Ry. Co., 31 S. D. 475; Missouri, O. &
G. Ry. Co. v. Miller, 145 Pac. 371; Iverson v. Look, 32 S. D.
323; LaBatt on Master & Servant, Sec. 1363, Vol. 4.

GATES, J.   In February, 1914, the defendant was construct-
ing the Colonial Theater in Sioux Falls.   Thomas Ross was the
general superintendent of the work with authority to hire and
discharge employees and buy material.   Peter De Bood, husband
of the plaintiff, was foreman of the work under Mr. Ross.   He
was an experienced carpenter.   In the afternoon of February 23,
1914, while crossing from the east side of the building to the
west side, using the bottom chord of a truss as a bridge to walk
upon, he slipped and fell to the floor, a distance of 14 feet.   His
left leg was broken just below the hip joint.   In May, 1914, he
was taken to Des Moines, where he was operated upon.   At that
time he was walking by the use of crutches, but was unable to
bear any weight upon the broken limb.   Without the operation
he would have been a helpless cripple.   As a result of the oper-
ation he died.   The immediate cause of his death was heart
failure as a result of the anaesthetic and the operation.   The
remote cause of his death was the fractured limb.   Recovery was
sought by plaintiff from defendant on the theory of defendant's
negligence in not providing a safe place to work.   Verdict and
judgment were for plaintiff.   A new trial was denied.   Defendant
appeals.

The truss from which De Bood fell had been completed,
except the tightening of the bolts.   There had been a staging 4
feet beneath the truss about 7 feet wide, consisting of 2x12
plank.   As testified by Mr. Ross:

"One purpose of the staging was for the men to work on in
building the truss.   The other purpose was that in case of a fall
there would be something to catch a person who fell."

The bottom chord of the trusses was made of similar plank

nailed together. That forenoon De Bood advised Ross there was no more plank from which to build the bottom chord of the next truss. Ross advised De Bood to take the plank from the staging and use it. Ross said:

"I told him to go ahead and do the best he could until I could get the other lumber up there."

The plank on the staging was then removed under De Bood's direction. Mr. Vierch, a carpenter then working on the building, testified:

"They took the scaffolding out from under those trusses before they were entirely completed. They had done that all the way along. They took them out about the time they had it constructed with the exception of straightening the line, straightening and lining it up, and tightening up these bolts, and we did that by crawling over."

Mr. Ross testified:

"Question: 'That was the general method you adopted of using the floor of the staging throughout to build the chords of the truss as you went along?'

"Answer: 'We used it as we went along, because we had an enormous lot of lumber in the staging. I had talked this over with Mr. De Bood and that was the method adopted by me and Mr. De Bood. * * * In the general method of construction, I consulted with Mr. De Bood. This method of construction which I adopted by taking the floor off from the scaffold and putting it on the truss, I talked over with Mr. De Bood. I told him to use up the material. He understood they were to use the material that went into the truss as staging. He agreed to that.' "

It is therefore entirely clear that Mr. De Bood must have known and fully appreciated the danger of using the bottom chord of the truss as a bridge to pass from one side of the building to another. The witness Vierch was the only eyewitness of the accident. He testified:

"I saw him fall. At the time he fell I was two trusses further north from the place he fell. I was up on the truss. I was looking at him when he fell. He was on this beam there, and he started from the left side, from the east side, to the west side.

He was asked a question and he walked across there. He held his hand on the upper beam and walked on the lower, and was going across, and when he came to this brace he went to step around it and his hand or his foot slipped at that time, I cannot tell which, and he fell. When he swung out to go around this brace he had his hands on the upper beam, and his feet were on the lower chord. I do not know which slipped, his hands or his feet, but he fell to the floor."

Upon cross-examination he testified:

"Mr. De Bood was on the east side of the building giving some instructions there, and he started to pass over on to the west side. He was called to the west side and he was walking across and using it for a bridge and walked across on it."

At that time there was staging along the east wall and a ladder to the floor and the same condition existed on the west wall. The testimony in this case is undisputed. The defendant offered no evidence except to recall Mr. Ross for cross-examination.

We are of the opinion that the motion of defendant for a directed verdict should have been granted. It is entirely clear that at the time of the accident De Bood was not performing any work upon the truss, but was simply using the truss as a bridge or means of passage from one side of the building to the other, presumably to give instructions to some workman on the other side who had asked a question. The doctrine of furnishing a safe place to work has no application to this state of facts. Granting that in crossing to the other side of the building De Bood was performing his duties as foreman, no one directed or advised him to cross upon the truss. There were two methods of going to the other side, one safe, the other apparently unsafe. De Bood, knowing full well the danger, voluntarily chose to adopt the unsafe method. He chose to go to the other side of the building on the truss instead of going down the ladder, crossing the floor and going up the ladder on the other side. He therefore must he held to have voluntarily assumed the risk of so doing. Thompson v. C., M. & St. P. Ry. Co., 27 S. D. 567, 132 N. W. 158.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.