SCHNEIDER, Respondent, v. BOSLEY, Appellant.

(165 N. W. 1.)

(File No. 4080.　Opinion filed November 22, 1917.)

**1.　Master and Servant—Servant's Injury in Sausage Machine—Pulling Driving Belt, Non-use of Electric Switch—Dangerous Method, Whether Negligence.**

Where the remote cause of an accident to plaintiff employee in use of a sausage machine, was negligence of employer in not repairing the shifting device, and the proximate cause thereof was plaintiff's act in pulling the belt off a revolving pulley, which method of stopping the machinery was known to employer, **held,** that plaintiff, a sausage maker, was not justified in using such admittedly dangerous method to stop the sausage machine, in order to take out the knives, where he might have stopped the machine safely by use of an electric switch, to reach which was not dangerous.

**2.　Evidence—Witness' Statement—Unsupported Conclusion.**

In a suit by an employee, sausage maker, for injury from pulling a belt off a pulley to a shaft, to stop a sausage machine which he was operating, testimony that: "It was about as much danger going around that way (to an electric switch) and be catched on the other belt"—**held** to be a mere conclusion of the witness, entirely unsupported by any facts.

Appeal from Circuit Court, Brown County.　Hon. RAYMOND L. DILLMAN, Acting Judge.

Action by C. R. Schneider, against U. Bosley, to recover for damages for personal injuries.　From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.　Judgment and order reversed.

*Geo. H. Fletcher,* and *Campbell & Walton,* for Appellant.

*E. B. Harkin,* and *F. L. Sieh,* for Respondent.

(1) To point one of the opinion, Appellant cited:　DeBood v. Pay (S. D.) 157 N. W. 307; 26 Cyc. 1249; Larson v. Knapp-Stout Co. (Wis.) 73 N. W. 992.

Respondent cited.　Erdman v. Illinois Steel Co., 95 Wis. 6; Indianapolis & St. L. R. Co. v. Watson, 114 Ind. 20.

(2) To point two of the opinion, Appellant cited: Abbott's Proof of Facts, p. 348.

GATES, P. J. Action for damages for personal injuries. Verdict and judgment for plaintiff. Defendant appeals from the judgment, and an order denying a new trial.

Appellant owned and operated a meat market in Aberdeen. Respondent was employed as a sausage maker. He had large experience in that work, and with sausage making machinery. He began work November 3, 1913. In the basement of appellant's building there was an ice machine, a sausage making machine, and other machinery. The machinery was operated by electric power transmitted to a main shaft near the floor. From the main shaft the power was transmitted to an overhead shaft by a belt, called by the witnesses the main belt. From the overhead shaft the power was transmitted to the sausage machine by a smaller belt. Upon the sausage machine were two pulleys, one referred to as the main pulley, the other as the loose or idle pulley. By means of a shifting device or lever the smaller belt was transferred from one pulley to the other; to the main pulley when it was desired to operate the sausage machine, to the loose pulley when it was desired to stop it. This shifting device became loose so that at one or more times the smaller belt shifted over to the main pulley of its own accord. It was thus dangerous to take out the knives of the sausage machine because, by reason of such defect, the machine might start running and endanger the safety of the operator. The respondent therefore tied the lever of the main pulley, so that it could not be used for shifting the belt. The ice machine when in operation was run from the main shaft. There was a shut-off or switch near the electric motor which would stop the running of all the machinery. Instead of going to the switch to shut off the power from the sausage machine, respondent got in the habit of throwing off the large belt from the pulley while in motion. This would still enable the ice machine to run, but would stop the machines attached to the overhead shaft. In doing this the respondent was on November 24, 1913, caught in the belting and shafting, and was severely injured. The belt was in good condition, except that "the splicing was four to six inches apart." Respondent testified that about a week before the accident he called appellant's attention to the defect

in the shifting device and to the condition of the belt, and that he (respondent) was compelled to use the big belt to stop the sausage machine, and that appellant promised to make the repairs, but that they were not made. The ice machine was not running on the day of the accident, and had not been running for several days. The electric switch was about 25 to 28 feet at the left of respondent when he was operating the sausage machine and in clear view, and the large belt was about 15 feet from him.

[1, 2] The remote cause of the accident was the negligence of appellant in not repairing the shifting device when its defects were called to his attention. The proximate cause of the accident was the act of respondent in pulling the belt off the revolving wheel or pulley attached to the main shaft. It is not claimed by respondent that appellant directed him to do that. The most that he claims is that appellant knew that such was his method of stopping and starting the overhead shaft. Was he justified in using this admittedly dangerous method if a safe method was provided? We think not. De Bood v. Pay, 37 S. D. 207, 157 N. W. 307; Thompson v. C., M. & St. P. Ry. Co., 27 S. D. 567, 132 N. W. 158; Indianapolis & St. L. Ry. Co. v. Watson, 114 Ind. 20, 14 N. E. 721, 15 N. E. 824, 5 Am. St. Rep. 578. Then the question is, Was a safe method provided? From the evidence a safe method was provided by the use of the electric switch if it was safe to go to the switch from the sausage machine while the main shaft was revolving. It was intimated by respondent that it was dangerous to go to the switch while the machinery was in motion. He testified: "It was about as much danger going around that way and be catched on the other belt." This was a mere conclusion of the witness, entirely unsupported by any facts. On the contrary, the evidence shows without dispute that the way to the switch was perfectly safe.

The real reason for using the belt instead of the switch is shown by plaintiff's own testimony, viz.:

"Q. Why didn't you shut off the machinery with the switch before you went upstairs? A. A man got so used to going and doing it the other way, because the ice machine was running half the time, and you cannot [evidently meaning, must not] shut the power off when the ice machine was running. It was closer to the belt than it was to the switch. It was easier to turn off the

switch than it was to push off the belt if a man could turn it off all the time. When the ice machine was not running all I had to do was to push the button; that would start the machine, and push it again, and it would stop. If the ice machine was not running it was not necessary to go to the belt at all to stop the machinery or to start it if a man wanted to make the trip."

We are of the opinion that the verdict was without support. The judgment and order appealed from are reversed.