FRANK TWIST *vs.* WINONA & ST. PETER RAILROAD COMPANY.

August 30, 1888.

Contributory Negligence—Children of Tender Years.—A child of such tender years as to be incapable of exercising any judgment or discretion cannot be charged with contributory negligence. But where a child has attained such an age as to be capable of exercising his judgment and discretion, he is responsible for the exercise of such a degree of care and vigilance as might reasonably be expected of one of his age and mental capacity.

Same—Child Playing on Turn-table—Defendant held not Liable.—A boy of the age of nearly 10½ years, and of average intelligence, who had been frequently in the vicinity of a railway turn-table, and had a general knowledge of its structure and operation, and had been repeatedly warned by his father that it was dangerous to play upon it, and told not to do so, and knew that the railway company prohibited children from playing on the table, and also knew that he had no right to play upon it, and that it was dangerous to do so, engaged with other boys in swinging upon it

while in motion, and was injured by his foot being caught between the arm of the table and the stationary abutments. *Held,* that the conduct of the boy amounted to contributory negligence, although he might not have been of sufficient age and discretion to understand and comprehend the full extent of the danger to which his conduct exposed him.

**Same—Construction of Special Findings.**—Special findings of fact construed as amounting to a finding that the boy was guilty of contributory negligence.

Plaintiff brought this action in the district court for Nicollet county, (under Gen. St. 1878, *c.* 66, § 34,) to recover damages for injuries sustained by his minor child, Verne Twist, while upon a turn-table of the defendant. The complaint charges defendant with negligence in not locking or guarding the turn-table. At the trial, before *Webber,* J., the jury found a general verdict of $5,000 for plaintiff, and made the special findings recited in the opinion. The defendant moved for a new trial on the grounds (among others) that it was entitled to judgment in its favor on the special findings; that the special and general verdicts were inconsistent, and that the general verdict and the third special finding were not justified by the evidence. The notice of motion also stated that defendant would move "for such other or further relief in the premises as may be just." At the hearing of the motion the defendant asked judgment in its favor on the special findings, or should that be denied, for a new trial. The motion was denied, and the defendant appealed.

*Wilson & Bowers,* for appellant.

*Lusk & Bunn,* for respondent.

MITCHELL, J.   This action was brought to recover damages for personal injuries sustained by plaintiff's son while playing on one of defendant's turn-tables. The table was situated upon defendant's own premises, in the suburbs of St. Peter, some five or six hundred feet from the depot. The premises were uninclosed, but the table was not so near any highway or street as to interfere with the safety or convenience of public travel. It was what is called a "skeleton" turn-table, of the kind in general use by railways except in round-houses. In accordance with the general usage, it was not locked, but was supplied with latches of the usual kind to keep it in place when

in use.   These latches weighed four or five pounds each, but could' be lifted out of their sockets, and the table set in motion, by com-paratively small children.   Boys had been frequently in the habit of setting the table in motion, and playing on it, and during the 15 or 20 years it had been there three boys had been injured by it, all of which facts were known to the defendant.   The agents of the rail-way company had frequently forbidden children from playing on the table, and were in the habit of driving them away when they saw them doing so.   It does not appear but that some way might be de-vised of keeping such turn-tables locked when not in use, but the evi-dence does show that no such contrivance has yet been devised, and. that the general custom is to leave them unlocked and merely held in place by latches, as this one was.   Plaintiff's son, a boy of the age of 10 years and 4 months, went, in company with several other boys, into the vicinity of the table, and, after the others had set the· table in motion, he also joined in swinging on it, and sustained the· injuries complained of, in the usual way, by his foot being caught between the arms of the table and the stationary abutments.   The· negligence charged against the defendant is in not locking the table,. so that it could not be set in motion by children.

The rule invoked by plaintiff is that laid down by this court in, *Keffe* v. *Milwaukee & St. Paul Ry. Co.*, 21 Minn. 207, and by the su-preme court of the United States in what may be termed the pioneer "turn-table case," (*Railroad Co.* v. *Stout,* 17 Wall. 657,) in which it is held that the owner of dangerous machinery, who leaves it in an open place, though on his own land, where he has reason to believe· that young children will be attracted to play with it, and be injured,. is bound to use reasonable care to protect such children from the dan-ger to which they are thus exposed.   The line of argument adopted in the "*Keffe Case,*" in support of this rule, is that such machinery, being attractive to young children, presents to them a strong tempta-tion to play with it, and thus allures them into a danger whose nature and extent they, being without judgment and discretion, can neither apprehend nor appreciate, and against which they cannot protect them-selves; that such children may be said to be induced by the owner's own conduct to come upon the premises; that what an express invi-

tation is to an adult, an attractive plaything is to a child of tender years; that as to them such machinery is a hidden danger,—a trap. Much of the briefs of counsel, especially of that of defendant, is devoted to the consideration of. the doctrine of these so-called "turntable" cases, and of the question of the duty, if any, which the owner of dangerous machinery or other articles situate on his own premises owes to intermeddling or trespassing children. The doctrine of these cases has been questioned by some courts, and repudiated by others, who hold that a land-owner is not bound to take active measures to insure the safety of intruders, even children, nor is he liable for any injury resulting from the lawful use of his premises to one entering without right; that to intruders or trespassers the land-owner owes no duty; and where there is no duty to perform there can be no negligence. *Frost* v. *Eastern R. Co.,* (N. H.) 9 Atl. Rep. 790. Applied to one of sufficient mental capacity to be a conscious trespasser, this is undoubtedly a sound rule; but if applied to children of tender years, strictly *non sui juris,* it would seem harsh and inhuman. Properly qualified and limited in its application, the doctrine of the *Keffe Case* is, in our judgment, in accordance with both reason and the dictates of humanity. But some of the cases have undoubtedly gone too far. By adopting an extreme or extraordinary standard of duty on the part of the land-owner on the one side, and on the other side by attributing the conduct of all children to their childish instincts so as to exempt them from the charge of contributory negligence, regardless of age or mental capacity, it is obvious that the rule of the Keffe and similar cases is capable of indefinite and unbounded applicability. To the irrepressible spirit of curiosity and intermeddling of the average boy there is no limit to the objects which can be made attractive playthings. In the exercise of his youthful ingenuity, he can make a plaything out of almost anything, and then so use it as to expose himself to danger. If all this is to be charged to natural childish instincts, and the owners of property are to be required to anticipate and guard against it, the result would be that it would be unsafe for a man to own property, and the duty of the protection of children would be charged upon every member of the community except the parents or the children themselves. This court itself, if it has not

modified the *Keffe Case*, has at least indicated that the doctrine which it announces is not to be given any such extreme and unlimited application. *Kolsti* v. *Minn. & St. Louis Ry. Co.*, 32 Minn. 133, (19 N. W. Rep. 655;) *Emerson* v. *Peteler*, 35 Minn. 481, (29 N. W. Rep. 311.)

It is unnecessary, however, to determine whether, upon the facts in the present case, the finding of negligence on part of the defendant can be sustained, inasmuch as it is clearly established by both the evidence and the special findings of fact that the boy himself was guilty of contributory negligence. The law very properly holds that a child of such tender years as to be incapable of exercising judgment and discretion cannot be charged with contributory negligence; but this principle cannot be applied as a rule of law to all children, without regard to their age or mental capacity. Children may be liable for their torts or punished for their crimes, and they may be guilty of negligence as well as adults. The law very humanely does not require the same degree of care on the part of a child as of a person of mature years, but he is responsible for the exercise of such care and vigilance as may reasonably be expected of one of his age and capacity; and the want of that degree of care is negligence. The fact that he may not have the mature judgment of an adult will not excuse a child from exercising the degree of judgment and discretion which he possesses, or for disregarding the warnings and orders of his seniors, and heedlessly rushing into known danger. In the *Stout Case*, the defendant made an express disclaimer of any contributory negligence on part of the plaintiff. In the *Keffe Case*, which was disposed of on the pleadings, this court said: "It was not urged upon the argument that plaintiff was guilty of contributory negligence, and we have assumed that he exercised, as he was bound to do, such reasonable care as a child of his age and understanding was capable of using." And as was remarked in the *Keffe Case*, in the cases cited in support of these "turn-table" cases, "the principal question discussed is not whether the defendant owed the plaintiff the duty of care, but whether the defendant was absolved from liability for breach of duty by reason of the fact that the plaintiff was a trespasser, who by his own act contributed to the

injury; and the distinction is not sharply drawn between the effect of plaintiff's trespass as a bar to his right to require care, and the plaintiff's contributory negligence as a bar to his right to recover for the defendant's failure to exercise such care as it was his duty to use." But the authorities are all one way, and to the effect that even a child is bound to use such reasonable care as one of his age and mental capacity is capable of using; and his failure to do so is negligence. *Wendell* v. *New York Central, etc.; R. Co.,* 91 N. Y. 420; *Messenger* v. *Dennie,* 141 Mass. 335, (5 N. E. Rep. 283;) *Chicago, R. I. & Pac. Ry. Co.* v. *Eininger,* 114 Ill. 79; *Brown* v. *European & N. Am. Ry. Co.,* 58 Me. 384; *Achtenhagen* v. *City of Watertown,* 18 Wis. 331, (86 Am. Dec. 769;) *Masser* v. *Chicago, R. I. & Pac. Ry. Co.,* 68 Iowa, 602, (27 N. W. Rep. 776;) *Murray* v. *Richmond & Danville R. Co.,* 93 N. C. 92; *Ludwig* v. *Pillsbury,* 35 Minn. 256, (28 N. W. Rep. 505;) *Railroad Co.* v. *Gladmon,* 15 Wall. 401; *Gillespie* v. *McGowan,* 100 Pa. St. 144.

The evidence in the present case shows without conflict substantially the following facts: The boy was nearly 10½ years old, and of at least average intelligence. He had been at school since he was 6 or 7 years old. His father was a railroad man, in the employment of the defendant around the yard and depot, and the boy had been frequently around the railroad grounds and the turn-table with his father. He was evidently familiar, at least in a general way, with the working of the turn-table and the use of the latches. His father had repeatedly warned him against going on the turn-table, and told him of the danger, and that he must not go on it. He evidently had quite a lively sense of the danger of playing on the table, and of the manner in which accidents were liable to occur to those swinging on it. The boy himself admits that he knew there was great danger of getting hurt on it. He knew that playing on it was forbidden by the railroad company, and that if its agents saw children doing so they would drive them off. It is suggested that his motive in going to the table was to try to induce the other boys to get off lest they might get hurt. But if he had such a realizing sense of their danger, so much the more inexcusable was it for him to go and do precisely what he knew was exposing them to danger.

Upon this state of the evidence the jury, in addition to their general verdict, found the following facts in answer to the following questions submitted to them: "*First.* Did Verne Twist, when he went to play on this turn-table, on the day when he was hurt, know that it was dangerous? *Answer.* Yes. *Second.* Did Verne Twist, when he went to play on this turn-table, on the day when he was hurt, know that he had no right to go there, and that it was dangerous to play on the turn-table? *A.* Yes. *Third.* Was Verne Twist, when he went to play on this turn-table, on the day when he was hurt, of sufficient age and discretion to understand and comprehend the danger he subjected himself to. *A.* No." These special findings must, if possible, be so construed as to be consistent with each other, and also supportable by the evidence. If the third finding means that the boy was of such tender years as to be incapable of exercising any judgment and discretion, or of understanding that his acts exposed him to danger, it would be inconsistent with the other findings, and wholly unsupported by the evidence. In the light of the testimony, and taken in connection with the previous findings, all that it can mean is that while the boy knew that he had no right to play on the turn-table, and that it was dangerous to do so, yet he did not fully understand or appreciate the extent of the danger in all its possibilities. But this may be said of almost every case of contributory negligence, even on part of adults. No one voluntarily and unnecessarily enters a danger which he knows to exist without expecting to escape it. In all cases of conscious self-exposure there is a failure to realize the extent or degree of the risk. But the act is none the less contributory negligence, if the party fails to exercise ordinary care. In the present case, while the boy did not realize the extent of the danger as fully as would an adult, yet he knew that he had no right to go upon the turn-table; that his father had warned him that it was dangerous, and he himself knew that it was dangerous. Yet he goes, a conscious trespasser, and does the forbidden and dangerous act. While we are not disposed to adopt a severe rule by which to judge the conduct of childhood, yet such conduct on part of an intelligent boy of nearly $10\frac{1}{2}$ years amounts to contributory negligence, and cannot be excused on the plea of childish instincts. We are of opinion that

upon the special findings the defendant was entitled to judgment. The cause is remanded, with directions to the district court to enter judgment for defendant.