JENNIE M. EVARTS *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RY. CO.

Argued Dec. 12, 1893. Affirmed Jan. 5, 1894.

No. 8411.

A volunteer can not recover of the master for injury caused by mere negligence of the master's servants.

If a person volunteers to assist the servants of another, the master owes him no contract duty, and he assumes all the ordinary risks incident to the situation, and cannot recover from the master for an injury caused by a defect in the instrumentalities used, or by the mere negligence of the servants.

But may if the servant knowing the danger fail to exercise reasonable care.

But if, after discovering that such volunteer has placed himself in a position of danger, even through his own negligence, the servants fail to exercise reasonable care to avert the danger, the master will be liable.

Liability rests on the duty not to inflict wanton injury.

This liability does not rest on any contract obligation, but on the general duty not to inflict a wanton or willful injury on another. As respects this duty, a volunteer cannot occupy a less favorable position than a trespasser.

Appeal by defendant, the St. Paul, Minneapolis and Manitoba Railway Company, from an order of the District Court of Hennepin County, *Henry G. Hicks*, J., made July 3, 1893, denying its motion for a new trial.

The plaintiff, Jennie M. Evarts, brought this action as administratrix of the estate of her deceased husband, James Evarts, under 1878 G. S. ch. 77, § 2, to recover of defendant $5,000 for wrongfully causing his death on November 11, 1891, in its yards in Minneapolis. He was employed by defendant as a timekeeper in its yards in that city to keep the time of its workmen and an account of the materials used in constructing improvements. J. A. Supple, foreman of construction, sent him from the office on Fourth Avenue North and Third Street to the Osseo dump, a mile west, with a verbal order to McGowan, the conductor of the construction train, to push up six car loads of stone then at the dump and place them on a sidetrack near the work at Washington Avenue. McGowan pushed them up ahead of twenty-nine empty dump cars, the engine being in the rear or at the west end of the whole. Evarts rode back on one of the cars loaded with stone. The conductor gave a signal to pull the pin connecting the cars of stone with the dump cars and Evarts got between the two while in motion and, standing with a foot on the draw head of each car, stooped and pulled the pin. The conductor at this moment gave the engineer the signal to reverse the engine. He did so and this slackened the speed of the dump cars, but the cars of stone went on at former speed and Evarts fell to the track and was run over and killed by the first of the dump cars as they were slowing down. He had no experience as a brakeman and was not authorized to ride on this construction train. Plaintiff claimed that the conductor, seeing

Evarts in a dangerous position between the first dump car and the last car of stone, recklessly gave the signal to slack up the dump cars and thereby caused him to fall in the gap and be run over and killed; and that defendant is liable in damages for this act of its servant, the conductor, in the prosecution of its business.   The jury found a general verdict for the plaintiff and assessed her damages at $5,000. They also found specially that McGowan, the conductor, knew, or in the exercise of ordinary care had reason to believe, when he gave the signal to reverse the engine, that Evarts would be imperilled thereby. The defendant moved for a new trial.   On denying it, the Court said:

"The question which it seems necessary to determine upon this motion for a new trial is, the very important and perplexing one whether the act of McGowan which caused Evarts' death can be imputed to the defendant company.   The order given by McGowan to Evarts to uncouple the train and the signal given by McGowan while Evarts was in a position of imminent peril, were both given by McGowan while in the prosecution of his duty as conductor, in the discharge of a duty which the defendant had employed him to perform, and the master should be held liable for the results.   Wood, Master and Servant, §§ 293, 299.

*Benton, Roberts & Brown* and *W. E. Dodge,* for appellant.

Evarts was a mere volunteer and assumed all the risks incident to a skilled brakeman engaged in the performance of the same duties and in the same situation.   *Church* v. *Chicago, M. & St. P. Ry. Co.,* 50 Minn. 218; *New Orleans* v. *Harrison,* 48 Miss. 112; *Gahagan* v. *Boston & L. R. Co.,* 1 Allen, 187; *McManus* v. *Crickett,* 1 East 67; *Osborne* v. *Knox, &c., R. Co.,* 68 Me. 49.

The undisputed evidence shows that the signal given by McGowan would have been a usual, ordinary and proper signal, had Evarts been a skilled brakeman occupying the position in which he then stood. If the servants of a railroad company who control the movements of a train have notice of the presence of any person, even a trespasser, on or around such train, such person being in a place of danger, the railway servants are bound to use reasonable care to avert such danger.   *Hepfel* v. *St. Paul, M. & M. R. Co.,* 49 Minn. 263.   But if such person has volunteered to perform the duties of one of such servants and occupies a position and situation perfectly safe as to one skilled

in the performance of such duties, then such servant, having assumed all the risks incident to such service, cannot recover if injured while so employed in its performance.

The Court erred in charging the jury that this case presents an exception to that rule, that the plaintiff cannot recover where he is guilty of contributory. negligence.

*Larrabee & Gammons*, for respondent.

The act of the deceased in volunteering to perform a dangerous service does not bar his recovery herein, because his death did not follow by reason thereof, but by reason of a subsequent act on the part of an agent of the company, seeing the man in a dangerous position.

MITCHELL, J.    This was an action to recover damages for the death of plaintiff's intestate, caused by the alleged negligence of the defendant.    At the time of his death, the deceased was in the employment of the defendant as assistant timekeeper, his duties being to keep an account of the time of men at work upon, and to make measurements of materials used in, construction work.    It was no part of his duty to assist in the operation of trains, nor had any conductor of a train authority to direct or employ him to assist in any such work.    Neither had he any experience, as brakeman or otherwise, in the operation of trains.

On the day of the accident he was sent by his superior officer from the office to a yard about a mile distant, with an order to the conductor of a construction train to bring certain car loads of stone to a place where construction work was going on.

Having delivered this message, he boarded the construction train for the purpose of riding back to the office.    The train consisted of thirty five cars,—six flat cars loaded with stone, and twenty nine empty dump cars.    The train was moving easterly, and was made up as follows:    At the west end was the engine, with the pilot facing east; then came the dump cars, and then the six cars loaded with stone; the engine facing the cars and pushing them, the stone being on the front end of the train 'as it moved east.    The deceased was riding on the rear car of stone next to the dump cars.

When the train approached the destination of the stone, the conductor in charge desired to put the six cars of stone upon one track,

and the twenty nine dump cars upon another parallel track, without bringing any portion of the train to a full stop.

This was to be done after the cars had attained a sufficient rate of speed, by uncoupling the stone cars, and then reversing the engine, which would check the speed of the dump cars, while the stone cars would continue at the previous rate of speed, and pass the switch, onto the desired track, before the dump cars reached it. To accomplish this, the conductor signaled the engineer to "kick" the train, in obedience to which the latter pushed the train rapidly ahead at the rate of from seven to ten miles an hour.

Immediately upon giving this order to the engineer, the conductor, as the jury found, ordered Evarts to pull the pin between the stone cars and the dump cars, and, in obedience to this order, Evarts stepped down between the stone car and the dump car next to it, and stooped down and pulled the pin. While the evidence is not entirely conclusive on the point, yet it would seem that Evarts, while pulling the pin in this stooping position, stood with one foot on each car. Meanwhile, the conductor had signaled the engineer to reverse his engine. The engineer promptly obeyed. This, of course, suddenly checked the speed of the dump cars with a jerk, as the slack between them was taken up. This jerk occurred while Evarts, still partially in a stooping position, was in the act of straightening himself up, holding the pin in one hand. The consequence was that he was thrown upon the ground, and run over by the cars and killed. The evidence is not very clear whether at this time Evarts still had one foot on each car, or, while in the act of straightening himself up, he had placed both feet on the end of the dump car. The defendant claims that the evidence shows that the latter was the fact. As we view the case, the question is not one of importance; but we think the jury would have been at least justified by the evidence in finding that, so suddenly did the whole thing occur, Evarts was still substantially in the same position when thrown from the cars as when the conductor signaled the engineer to reverse his engine.

The evidence was also ample to justify the jury in finding that the conductor knew Evarts' position when he gave the signal to reverse. In any event there is no assignment of error that raises the question of its sufficiency.

v.56m.—10

The negligence charged against defendant is the act of the conductor in signaling the engineer to reverse the engine when, as is claimed, he either knew, or ought to have known, that the result would be to endanger the life of Evarts.

The theory of the law, and doubtless the correct one, upon which the case was submitted to the jury, was that, as to the acts he was then performing, Evarts was a mere volunteer, and that the defendant owed him no contractual duty as master.

The learned trial judge, over and over again, in the most explicit manner, instructed the jury that plaintiff could not recover unless the conductor, at the time he gave the signal to reverse the engine, knew, or in the exercise of ordinary care ought to have known, that the giving of the signal "would result in jerking Evarts from the train;" "would necessarily produce injury to Evarts;" "would result in injury to Evarts."

This was but another way of saying that plaintiff could not recover unless, with knowledge that Evarts was in a dangerous position, the conductor, who controlled the movements of the cars, failed to exercise reasonable care to avert the danger. This is the law, even as to trespassers. *Hepfel* v. *St. Paul, M. & M. Ry. Co.*, 49 Minn. 263, (51 N. W. 1049.) This duty rests on no contract obligation, but upon the bare obligation, founded upon the dictates of common humanity, to avoid inflicting a willful or wanton injury on another. Had Evarts been a mere trespasser, and the conductor had seen him in such a position of danger, it would have been the duty of the conductor to exercise reasonable care to avert it, and, if he failed to do so, the defendant would have been liable. We fail to see why a volunteer should have any less rights than a mere trespasser. Because a man is a trespasser or a volunteer, he is not therefore an outlaw, so as to permit others to willfully or recklessly do him an injury.

It is no doubt the law, as repeatedly held, that, if a person volunteers to assist the servant of another, the master, as such, owes him no duty; that he assumes all the ordinary risks incident to the situation; and that he cannot recover from the master for an injury caused by a defect in the instrumentalities used, or by the mere negligence of the servants. *Church* v. *Chicago, M. & St. P. Ry. Co.*, 50 Minn. 218, (52 N. W. 647.)

But it seems to us that this is not inconsistent with the further proposition that if, after discovering such volunteer has placed himself in a position of danger, even through his own negligence, the servants fail to exercise reasonable care to avert the danger, the master will be liable. Such must be the law unless, as already suggested, a volunteer occupies a less favorable position than a trespasser. There is nothing in the *Church* Case inconsistent with this; and, while we have found no case precisely in point, there is nothing inconsistent with it in any of the cases cited by counsel. It is sometimes given as a reason why a master is not liable to a volunteer for the negligence of a servant that a servant cannot, by his officious conduct, impose a greater duty on the master than that which the latter owes his servant, and that a master is not liable to a servant for the negligence of a fellow servant. If there is anything in this "fellow-servant" doctrine that has any bearing on the question, it is at least inapplicable in this state as to railway companies.

It strikes us that the very ingenious argument of counsel for the defendant is all based on one radical fallacy, to wit, that in all respects, and for all purposes, Evarts is to be considered as a skilled and experienced brakeman, and therefore, if he did or failed to do anything which an experienced brakeman, in the exercise of reasonable care, would have done or omitted to do, he was guilty of negligence which would prevent a recovery; also, that if the conductor of the train did nothing that would have been negligent had Evarts been an experienced brakeman, then he was not guilty of any negligence in this instance.

To the first part of this proposition it is sufficient answer that the question of Evarts' negligence up to the time the conductor gave the signal to reverse the engine was wholly immaterial, under the theory upon which the case was submitted to the jury, to wit, that a recovery could only be had in case the conductor, when he gave the signal, knew, or in the exercise of ordinary care had reason to believe, that Evarts would be imperiled thereby. The court correctly instructed the jury that "although it may be deemed an act of negligence on the part of Evarts to have gone there and performed this duty as a volunteer, because dangerous to any man unaccustomed to perform it, * * * yet if, after he assumed to do that act, even though he was negligent, and the conductor, as a matter of fact, saw him in that

perilous position, and gave the order knowing that the effect of the order would be to throw him from the car, then his negligence would not prevent a recovery." To the matter of negligence on the part of Evarts after the conductor signaled the engineer we will refer hereafter.

The second branch of the proposition, viz. that the conductor was not negligent if he did nothing but what would have been proper had Evarts been an experienced brakeman, is clearly incorrect. If he knew, as he did, that Evarts was inexperienced, and for that reason in greater peril, it was the conductor's duty to regulate his conduct with reference to that fact. A position might be perilous to a young boy that would not be so to a mature man; and for the same reason the conductor should reasonably have anticipated danger to an inexperienced man like Evarts, when he might not have done so in the case of an experienced brakeman.

The second branch of the proposition, viz. that the conductor was The court after charging the jury, as already stated, that, even if Evarts was negligent on account of his inexperience in attempting to perform so dangerous an act, this would not prevent a recovery if, as a matter of fact, the conductor saw him in a perilous position, and gave the order knowing that the effect of it would be to throw him from the car, added: "This, then, is the exception to the rule that the plaintiff cannot recover where he is guilty of contributory negligence; and I think I may say to you there is no evidence of contributory negligence in this case which you need consider." This forms the subject of the fourth assignment of error. It is undoubtedly true that the action of the conductor is to be judged by the facts existing and known to him when he signaled the engineer, for he was not required to anticipate any subsequent and independent act of negligence on the part of Evarts.

But it seems to us quite clear, from a perusal of the record, that the only negligence on the part of Evarts claimed on the trial was that of an inexperienced man attempting to perform an act essentially dangerous. This was evidently the understanding of the trial court, and, if defendant claimed any other and subsequent act of contributory negligence, the attention of the court ought to have been called to it specifically.

But in any view of the case we fail to see any evidence of negligence on the part of Evarts other than that of attempting to do a perilous

act as to which he was inexperienced,—a fact known to the conductor when he gave the signal.

The only other negligence which defendant claims is that he had placed his feet on the end of the dump car, when he ought, after drawing the pin, to have gotten back upon the stone car, where he would have been safer when the jerk came from letting out the slack. If this were so, it is only what might have been reasonably anticipated from an inexperienced man.   But remembering that the burden of proof on this point was on the defendant, and that there is no evidence that Evarts knew, or had reason to suppose, that the signal to reverse the engine would be given so soon, and the further fact that the whole thing was done so quickly that he had not yet had time to regain an erect posture after stooping over to take out the pin, we do not think that the jury would have been justified in finding the specific act of negligence now claimed, even if the question had been submitted to them.

When the jury returned into court for further instructions the judge charged them that unless they could answer the third question intelligently they ought not to, and could not, give a general verdict, because the whole case depended on that question.   The question referred to was:   "Did the conductor know, or in the exercise of ordinary care have reason to believe, that Evarts would be imperiled by the signal to reverse the engine?"   It is contended that this was erroneous, for the reason that it was an instruction that they could not render a verdict for the defendant unless they could answer this question.   Of course, the instruction is subject to this verbal criticism; but what the court evidently meant was that no verdict for the plaintiff could be rendered unless the jury could answer the question in the affirmative, and it is impossible that they could have understood the instruction otherwise.

Order affirmed.

(Opinion published 57 N. W. Rep. 459.)