# WALTER C. CARLSON v. SANITARY FARM DAIRIES, INC. AND ANOTHER.[1]

June 4, 1937.

Nos. 31,204, 31,205.

[1]Reported in 273. N. W. 665.

178

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for appellants.

*Bundlie, Kelley & Finley,* for respondents.

LORING, JUSTICE.

In suits to recover for personal injuries, expenses, and loss of services arising out of a collision between a milk truck and a bicycle ridden by the minor plaintiff, John W. Carlson, he and his father recovered verdicts respectively in the sums of $18,000 and $6,000. The defendants come here on appeal from orders denying their motions for judgment or a new trial.

The accident occurred at about 6:50 a. m. on July 13, 1935, on a paved alley which extends from Fairview avenue to Underwood avenue between Pinehurst avenue and Ford Road, a block about 1,200 feet long, in the city of St. Paul. At that time John W. Carlson, the minor plaintiff, was about six years and ten months old. The milk truck approached the scene of the collision from the west. As it came into the alley from the Fairview end it had to climb something of a hill, but before it arrived within 300 or 400 feet of the place of the accident it was traveling on a slight upgrade (one-half of one per cent). There were no houses or garages on the south side of the 20-foot paved alley, but on the north side there were a number of houses and garages, the latter being placed side-

ways to and abutting upon the alley with entrances and paved driveways leading thereto on and from the easterly ends thereof. The defendant Arnold, who was driving the truck, was on his way to a residence three or four lots easterly of the point of collision. The truck was equipped with two-wheel brakes only. It was short and, at the time of the collision, heavily loaded. It was so arranged that the driver might sit in the cab or stand in either side of the truck and steer it conveniently by means of a vertical steering handle. In case the driver occupied the standing position, he was provided with brake and clutch pedals which could be operated by his feet. The truck was equipped with a governor calculated to limit its top speed to 21 miles per hour. As Arnold drove it easterly in the alley approaching the place of collision he was operating the truck from the standing position on the right side. Eyewitnesses estimated his speed at from 20 to 25 miles per hour. He stated that he did not see John until John rode out of the driveway on the easterly side of the Roalkvam garage, just east of which the collision occurred. He estimated that John was then 12 or 15 feet from him. This was undoubtedly an understatement because one of the eyewitnesses testified that she heard the screech of his brakes before his truck emerged from behind the garage. The boy on the bicycle collided with the left front corner of the truck and was so injured that one of his legs was amputated above the knee, one of his thumbs was amputated, and he was very badly bruised, shaken up, and internally injured. There was evidence that skid marks extended westward from the truck, as it was situated after the accident, for about 27 or 28 feet.

The appellants contend, first, that the evidence is insufficient to sustain a finding of negligence on the part of the driver; second, that it conclusively appears that John was negligent; third, that the court erred in submitting the case to a jury on the theory of wilful negligence; fourth, that it erred in refusing their request, made at the close of the argument to the jury, that the court instruct the jury as to the rule applicable to those who are confronted with an emergency; fifth, that the court erred in defining the defendants' duty toward children.

■ It is conceded that children were accustomed to play in this alley and that the defendant Arnold was aware of this custom, although he claims never to have seen children playing in the alley at so early an hour. There was some evidence that just prior to the point of impact the left side of his car was somewhat to the left of the center line of the 20-foot pavement in the alley. Arnold testified that he was on the alert for cars that might be backing out of the garages on his left, but if, under the circumstances, he was traveling at the speed testified to by two of the eyewitnesses, with a heavily loaded truck which was equipped with brakes on the rear wheels only, we think it was a question for the jury to determine whether or not he was guilty of negligence under the circumstances disclosed by this record.

■ Mr. Justice Mitchell, in Twist v. Winona & St. P. R. Co. 39 Minn. 164, 169, 39 N. W. 402, 405, 12 A. S. R. 626, stated:

"A child is bound to use such reasonable care as one of his age and mental capacity is capable of using; and his failure to do so is negligence."

This doctrine is applicable to children of the age of John. Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1. In the case last cited Mr. Justice Hilton reviewed the authorities with reference to the so-called Illinois and Massachusetts rules, and this court adopted the Massachusetts rule as the more just and reasonable and there held that the jury was justified in finding a six-year old child guilty of contributory negligence. The contention here is that John was guilty of contributory negligence as a matter of law and that the jury was not justified by the evidence in acquitting him of such negligence. John evidently took no precaution to look either way on the alley before riding out onto it. But we think that the jury was justified in finding that he used such care and vigilance as might reasonably be expected of one of his age and mental capacity. The jury might well have thought that a child of that age may have depended upon his acute hearing for warning of the approach of vehicles. According to one of the witnesses, he had been riding along the alley immediately before the accident and

had turned off from it onto the Roalkvam driveway. If at that time he had not been aware of the approach of the truck or heard it coming, a child of his age and mental capacity may have thought himself justified in returning without further observation.

■ At the request of the plaintiff the court charged:

"If you find from the evidence in this case that the defendant Arnold, before this accident happened, saw or discovered the plaintiff's child in a position of danger in time to avoid this accident and after such discovery failed to exercise ordinary or reasonable care to prevent injury to said child, then and in such case, even though you should also find that said child was guilty of contributory negligence your verdicts would be for the plaintiffs."

(a) Before passing to the consideration of this charge, we wish to express our disapproval of the action of some trial courts in announcing, as was done in this case, that any portion of the charge is given by request of either party. A requested charge should be given only when the trial court approves of and adopts as its own the law contained in the request, and it should preferably be incorporated in the appropriate part of the body of the charge so as not to destroy its symmetry.

(b) The complaint in this action alleged that Arnold, after observing John in a position of danger, "failed to use the means at hand to avoid injury to said child," which was quite obviously an allegation of wilful or wanton negligence within the rule laid down in Anderson v. M. St. P. & S. S. M. Ry. Co. 103 Minn. 224, 227, 228, 114 N. W. 1123, 1124, 14 L.R.A.(N.S.) 886. In that case the plaintiff was injured by being struck by a locomotive while he was standing upon the defendant's right of way too close to the track, and the complaint alleged that the defendant's servant in charge of the locomotive failed to check the speed thereof or give any warning of its approach, "although they knew, *or in the exercise of ordinary care on their part could readily have known or ascertained*" that plaintiff was in a dangerous and exposed position. This court there held that the inclusion of the words "or in the exercise of ordinary care on their part could readily have known or ascertained" pre-

vented the complaint from alleging a cause of action and that without the words last quoted it would have charged wilful or wanton negligence, which, though not necessarily including the element of malice or actual intent to injure another, does charge a reckless disregard for the person or property of another by failing, after discovering the peril, to exercise ordinary care to prevent the impending injury. Such negligence, if proved, established liability irrespective of contributory negligence. The question presented by this assignment of error is whether or not the evidence in this case justified the jury in finding wilful or wanton negligence on the part of Arnold. In our opinion it does not.

Arnold testified that he did not observe the boy until he came riding out onto the alley from behind the Roalkvam garage immediately before the instant of collision. From his own testimony and that of Miss Schleh, it is quite obvious that he immediately applied his brakes and then, just before the impact or at about that time, swung his truck to the right. The plaintiff contends that the jury would have been justified in finding that he saw the boy while he was riding his bicycle along the alley prior to the time when he turned off the alley around the east side of the Roalkvam garage. Upon this record it seems to us that the boy might not have been visible in the alley when Arnold came within view. But, assuming that all of the inferences which plaintiff contends for might be drawn and that Arnold might have seen the boy prior to his leaving the alley, nevertheless at the time when he then saw him John was not in a position of peril, but was leaving the alley toward and onto the Roalkvam driveway. The boy entered the position of peril when he turned around and came off the driveway into the alley, and it is quite evident from the record that Arnold, when confronted with this emergency, immediately took action to prevent the collision and that there was no evidence which would sustain a finding of wilful or wanton negligence. We think that the court erred in submitting the question of wilful negligence to the jury.

When Arnold observed the boy riding his bicycle off the driveway onto the alley, headed in that direction, it appears to us that the jury might well have found that he was confronted with an

emergency through no fault of his own, and the jury should have been instructed as stated in Johnson v. Townsend, 195 Minn. 107, 110, 261 N. W. 859, 861:

"The law is that one, suddenly confronted by a peril, through no fault of his own, who in the attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions."

■ Complaint is made of the charge in respect to what was said about the degree of care required toward children; and, while the language used in the charge was similar to some of the expressions of this court, it would be preferable to charge in substance that where children are known or may reasonably be expected to be in the vicinity a degree of vigilance commensurate with the greater hazard created by their presence or probable presence is required of a driver to measure up to the standard of what the law regards as ordinary care. Erickson v. M. St. P. & S. S. M. Ry. Co. 165 Minn. 106, 115, 205 N. W. 889, 45 A. L. R. 973. It is but a restatement of the rule that ordinary care is the exercise of a degree of care commensurate with the circumstances.

The orders denying new trials are reversed and the orders denying defendants' motions for judgment are affirmed.

PETERSON, JUSTICE (dissenting).

The evidence in this case required the trial court to submit the issue of "wilful and wanton negligence" to the jury. The evidence justified findings that the boy was in a position of peril, that the defendant Arnold knew that he was in that position, that he realized the necessity for taking action to avoid injuring the boy, and that he failed to take action which would have avoided the injury. The testimony shows that the boy was partly in the alley, in a position in which he was in front of and would be hit by the approaching automobile, when the driver first saw him. The boy was then in a position of peril. Mrs. Roalkvam testified that the front wheel of the boy's bicycle was in the alley when she heard the screeches of the automobile brakes. Mr. Fry testified that when the truck

was behind the garage he heard a loud screeching sound and that "this milk truck was putting on the brakes pretty solidly." Arnold was then, according to their testimony, behind the garage and on the north (his left-hand) side of the alley. He was going directly toward the boy. Miss Schleh testified that immediately after the accident she saw tire marks on the pavement on the north side of the alley, the nearest being about one or two feet from the garage, and the other opposite it about the width of an automobile, showing that Arnold applied the brakes at that place. If Arnold's testimony as to speed may be accepted, he was then going 17 or 18 miles per hour, on a slightly upward grade. The evidence of defendants' own expert, Antonson, is that tests made on macadam and asphalt roads showed that the truck could be stopped in a total distance of 30 feet when going 20 miles per hour. He also stated that the truck could be stopped in a shorter distance on concrete. This alley is paved with concrete. Antonson stated that of the 30 feet, 15 feet are consumed in the reaction of the driver in setting the brakes and the other 15 feet in actually stopping the truck. Here the distance traveled during Arnold's reaction and his setting of the brakes occurred at some point west of the garage and was complete when he set the brakes behind the garage so as to make the marks on the pavement in the alley, and the screeches of the brakes heard by Mrs. Roalkvam. According to Antonson, Arnold could have stopped within 15 feet from that point under less favorable road conditions than there prevailed and when going at a higher rate of speed than Arnold testified he was going. Accepting the test actually made by Antonson, Arnold should have stopped the truck before he hit the boy because the evidence shows that the boy entered the alley 15 feet from the east end of the garage, and Arnold had not only that 15 feet but also some distance behind the garage in which to stop. If allowance be made for the fact that the truck can be stopped on a concrete pavement in a shorter distance than on the roads on which the tests were made, some additional distance should be deducted, thus allowing ample distance to come to a complete stop without hitting the boy. If, in addition to this, the speed be taken as 17 miles per hour, as testified

by Arnold, he should have stopped in 12¾ feet, thus completely avoiding hitting the boy. The evidence shows that the boy was going in a southwesterly direction, but the description of his course upon the plats indicates that he did not go more than two feet to the west by the time he reached the middle of the alley, a distance of about nine and a half feet. If two feet to the west be allowed because of the course the boy traveled, Arnold would still have had the distance to the east end of the garage, plus 13 feet, in which to stop. This was ample to avoid hitting the boy, even if Arnold had proceeded straight in his course.

The jury might well have found that Arnold knew that the boy was in a position of peril when he applied the brakes behind the garage and realized that he should take affirmative action to avoid running over him with the truck. The jury could find that he first applied the brakes and then released them and went forward, because the evidence shows that the tire marks on the pavement were broken and that the truck had gone 27 or 28 feet east of the garage, in traveling which the truck struck the boy. If Arnold could stop in 12¾ feet and avoid hitting the boy, why did he travel more than 27 or 28 feet onward toward the boy and hit him? Why didn't he keep the brakes applied? Why did he not turn to the right when he applied his brakes back of the garage? These are questions which the jury might have considered in passing on the question as to whether Arnold exercised due care to avoid hitting the boy after knowing that he was in a position of peril and knowing that he would run over and injure the boy if he did not stop. The jury might well have found that Arnold could have turned to the right when he realized the boy was in a position of peril. Arnold testified that he turned to the right to such an extent as to get the right-hand wheels of the truck off the pavement, but he did not turn until he hit the boy, which was too late to avoid the collision. If Arnold were on the right-hand side of the alley, as he testifies he was, he could have turned into the vacant lots there without danger to himself and thus avoid the boy. If, on the other hand, Arnold were on the north side of the alley, as plaintiff's witnesses testified, he still had ample time when he was behind the garage to turn to

the right at the time he applied the brakes and drive off the pavement, thus avoiding the boy. He testified that the truck would have turned instantly had he pulled the steering rod. Thus the jury could find that after discovering the boy's position of peril Arnold failed to exercise reasonable means to avoid the collision.

This court is not justified in deciding the facts. It finds that Arnold immediately "took action to prevent the collision." The question is not whether Arnold took action to avoid the accident, but whether after the discovery of the child in a position of peril he failed to exercise ordinary or reasonable care to prevent injury to the child. Arnold's conduct is to be measured by the standard of reasonable care. The inferences to be drawn from the testimony were for the jury and not for this court. Questions of negligence and contributory negligence upon disputed evidence are for the jury. Rimmer v. Cohen, 172 Minn. 134, 215 N. W. 198; Hollander v. Dietrich, 181 Minn. 376, 232 N. W. 630; Peterson v. Miller, 182 Minn. 532, 235 N. W. 15; Harkness v. Zube, 182 Minn. 594, 235 N. W. 281; Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1; 5 Am. Jur. p. 877, § 673.

That an automobile driver can run down a child in plain sight of him without liability is not the law. In Weasler v. Murphy T. & S. Co. 167 Minn. 211, 213, 208 N. W. 657, 658, Mr. Justice Stone said:

"If there is one cause which, more than any other, should lead to the exercise of a high degree of care by an automobile driver, it is the presence of children in such a situation that any combination of action on their part and his can result in injury to them."

The rule is well settled in this state, as it is elsewhere, that a plaintiff may recover notwithstanding his contributory negligence if the defendant might, by the exercise of ordinary or reasonable care on his part after discovering the plaintiff in a position of peril, have avoided the accident. 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 7017, 7036. The reason for this rule as given by Mr. Justice Mitchell in Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 451, 74 N. W. 166, 170, 70 A. S. R. 341, is that in such cases the "wilful and intentional acts of the defendant are deemed the

sole proximate cause, and the negligence of the plaintiff only the remote cause, or, more properly speaking, the mere occasion, of the injury." He states that the same is true where, after discovery of plaintiff's negligence in time to avoid injury to him, the defendant neglects to exercise due care to do so. To same effect: Hinkle v. M. A. & C. R. Ry. Co. 162 Minn. 112, 202 N. W. 340, 41 A. L. R. 1377. In Rawitzer v. St. Paul City Ry. Co. 93 Minn 84, 87, 100 N. W. 664, 666, this court said: "This principle is founded upon the dictates of humanity, and is supported by great weight of authority." The rule has been applied in the following situations: A man on a streetcar track, Fonda v. St. Paul City Ry. Co. *supra;* a boy on a bicycle, Rawitzer v. St. Paul City Ry. Co. *supra;* a man on a railroad track, Evarts v. St. P. M. & M. Ry. Co. 56 Minn. 141, 57 N. W. 459, 22 L. R. A. 663, 45 A. S. R. 460; Havel v. M. & St. L. R. Co. 120 Minn. 195, 139 N. W. 137, 138; a six-year old girl on a railroad track, Sloniker v. G. N. Ry. Co. 76 Minn. 306, 79 N. W. 168; a boy on a railroad track, Palon v. G. N. Ry. Co. 129 Minn. 101, 151 N. W. 894; a man in an automobile, Mueller v. Dewey, 159 Minn. 173, 198 N. W. 428; a man on a bicycle, Pettygrove v. Hecht, 159 Minn. 260, 198 N. W. 809. Under these decisions, it was plainly for the jury to determine whether or not the boy was in plain sight of the truck, whether Arnold knew that the boy was in that position, whether there was time to avoid the injury, and whether or not he exercised due care to avoid the injury.

The jury was not bound, nor are we, to accept Arnold's testimony as true in all particulars. This would be so even if his testimony were not directly contradicted. The rule is that the fact that there is no conflict in the testimony does not make the question one for the court instead of the jury if the testimony is for any cause inconclusive in its nature. The evidence is inconclusive where different conclusions may reasonably be drawn from it and its credibility is doubtful. Jensen v. Fischer, 134 Minn. 366, 159 N. W. 827. Arnold says he was driving on the south (his right-hand) side of the alley. His testimony is that when he first saw the boy the boy was 12 feet ahead of him and just coming into the alley. The only testimony as to the speed of the boy is that he was going about

5 miles per hour. Arnold's own testimony is that the truck was going from 17 to 18 miles per hour. Arnold claims that he hit the boy along the center line of the alley. The distance from the point where the boy entered the alley to the center of the alley is 9 feet 10 inches, and making allowance for the fact that the front wheel of the bicycle was in the alley when Arnold first saw him, the boy would have to travel at least 8 feet from the point where Arnold saw him to the point of collision during the time Arnold traveled the distance that he stated. During the time the boy could travel the 8 feet at 5 miles per hour, Arnold would have traveled approximately 27½ feet, and it is clear that if his testimony is true he would not have hit the boy at all. That the testimony is not true might well have been found by the jury. Furthermore, Arnold does not deny nor explain the presence of the tire marks on the pavement as testified to by Miss Schlch, or the screeches of his brakes behind the garage, heard by Mrs. Roalkvam. His testimony might have been rejected by the jury under the rule of Jensen v. Fischer, *supra*. Furthermore, Arnold testified that as he came down the alley, even before he got to the Roalkvam garage, he was looking straight ahead. If he had looked straight ahead he would have seen the boy. Under similar circumstances, following the rule of B. & O. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. ed. 167, 56 A. L. R. 645, this court has held that a person may not escape liability for his negligence under circumstances such as these by testimony that he looked at a time and place and did not see an approaching train or automobile in plain view. Under such circumstances, the jury would be justified in finding that the person proceeded in negligent disregard of the dangers of the situation. Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254; Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145; DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350. In the instant case, Arnold's testimony is that he not only looked but that he continued to look. The fact that he applied the brakes shows that he looked and knew of the dangers in the situation in which he was driving the truck. Under the rule of the cases cited, he could be found to have disregarded the obvious peril in which he saw the boy. The rule should apply to

defendants in holding them liable for their negligence as well as to plaintiffs in holding them guilty of contributory negligence. From these facts the jury could find that Arnold saw the boy in a position of peril in time to avoid striking him, continued in his course, and ran over him.

In the case of Havel v. M. & St. L. R. Co. *supra*, the defendant contended that the engineer did not see the men on the railroad track ahead of him. This contention is like Arnold's, that he did not see the boy even though he was looking straight at the place where the boy was and that he did not see the boy until he rode in front of him. In the Havel case it appeared that Havel and another were walking upon the defendant's railroad tracks from Hopkins to St. Louis Park, on their way to work, and were struck by a train when they had reached a point about midway between the two towns. The engineer of the train testified that the train ran from 25 to 28 miles per hour; that a bell was ringing and that he was keeping a lookout straight ahead along the track, which at that point was straight for a mile; and that he did not see either of the two men. It was contended that this testimony showed that the engineer did not know that the men were in a position of peril and that consequently the rule did not apply. It was claimed in that case that the testimony of the engineer was conclusive, as it is claimed that the testimony of Arnold is conclusive here, but the court held to the contrary. Mr. Chief Justice Start in that case said:

"If, therefore, the evidence in this case was practically conclusive that the defendant's engineer, in charge of the locomotive hauling the train which struck and killed the men, did not discover them on the track in time to avoid striking them by the exercise of ordinary care, the defendant was entitled to a directed verdict. The engineer testified that the train was running from 25 to 28 miles an hour and the automatic bell was ringing; that he was at his post and keeping a lookout along the track, which was straight for a mile; that it was dark, and he could not see a man on the track more than 75 to 100 feet ahead; that he saw no one at any

time on the track, and did not know or learn that his engine had struck any one until he reached Minneapolis. There was no direct contradiction of his testimony that he saw no one at any time on the tracks. If the jury were bound to accept his testimony as true in its entirety, the defendant was entitled to a directed verdict. There could not, from the very nature of the case, have been any direct contradiction of the engineer's testimony that he did not see any one on the tracks; *but the jury were not bound to accept it as true, if other circumstances in evidence furnished a reasonable basis for concluding that it was not true.* Lang v. Ferrant, 55 Minn. 415, 57 N. W. 140." (Italics supplied.)

To the same effect, Rawitzer v. St. Paul City Ry. Co.; Sloniker v. G. N. Ry. Co. and other cases, *supra.*

It seems to me that the marks on the pavement and other physical facts discredit Arnold. Mr. Fry testified that Arnold turned the truck from the north to the south side of the pavement. The police officers testified that there were skid marks on the pavement going toward the rear wheels of the truck where it stood after the accident, showing that it had taken the course described by Mr. Fry. The court below properly submitted this issue to the jury, and the verdict of the jury is amply sustained by the evidence. There should be an affirmance.

