ROBERT H. WARNING AND ANOTHER v. KANABEC COUNTY CO-OPERATIVE OIL ASSOCIATION AND ANOTHER.[1]

June 2, 1950.

No. 35,087.

[1]Reported in 42 N. W. (2d) 881.

294

*L. M. Carlson* and *Snyder, Gale, Hoke, Richards & Janes,* for appellants.

*Freeman, King, Larson & Peterson* and *Nathan A. Cobb,* for respondents.

LORING, CHIEF JUSTICE.

Action for wrongful death of Robert Warning, a minor. The trial court directed a verdict for defendants. This is an appeal from the order denying plaintiffs' motion for a new trial.

The accident occurred on state highway No. 65, between the decedent, aged 10½ years, and a truck owned by defendant association and driven by its employe, the defendant Joseph Fafrowicz. Decedent, riding a bicycle down a private driveway, crossed the highway into the path of the truck, and was struck by it and killed.

On the morning of May 3, 1947, Robert Warning borrowed a friend's bicycle and, together with Donald Anderson, a playmate aged 11, went riding in the neighborhood of Robert's home on the outskirts of the village of Mora, Minnesota. State highway No. 65 extends in a north-south direction, passing the Warning home to the west. It is a heavily traveled arterial highway, about 32 feet wide, with guardrails on both sides at the point where the accident occurred. There is also a gradual upgrade on highway No. 65 to the north, the top of the hill being about a quarter of a mile from the scene of the accident.

At first the boys went north toward the Harlan place, then turned back and went up the Hoffert driveway to look at some forts which they had built in the woods near the Hoffert place. This driveway is about 200 feet south of the Warning residence

on the same side of the highway. It is made of sand and gravel and goes up an incline. (There is no stop sign thereon protecting the highway.) Because of the upgrade and the sand on the driveway to the Hoffert place, the two boys got off their bicycles and walked part of the way. After looking at the forts, they started down the hill. Donald preceded Robert by a short distance. As he approached highway No. 65, he slowed down by dragging his feet, because his bicycle did not have brakes, and made the turn north up the east side of the highway. As he stopped, he saw defendant's truck coming down the hill from the north and shouted to Robert, who had not yet reached the highway, "Look out. Here comes a truck." Robert immediately put his feet down and began to drag them on the driveway. He did not use his brakes. Because he was moving too fast to turn, as Donald had done, he went across to the west side of the highway and into the path of the truck, which Fafrowicz had swung toward the guardrails to avoid a collision. The truck hit the guardrails and decedent at about the same instant.

We are not concerned on this appeal with the negligence of the driver. Fafrowicz, which was clearly established because of excessive speed and defective brakes. The sole issue is whether decedent was guilty of contributory negligence as a matter of law.

Decendent's act in entering the highway from the private driveway without yielding the right of way to defendant's truck and his act in riding to the west side of highway No. 65 were in violation of M. S. A. 169.20, subd. 4, and 169.18, subd. 1, respectively. A violation of the traffic act is prima facie evidence of negligence (§ 169.96) which, if not rebutted, is conclusive. Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492; Lee v. Molter, 227 Minn. 557, 35 N. W. (2d) 801.

In the case at bar, the evidence did not reveal sufficient facts justifying decedent's violation of either statute to warrant submitting the case to the jury. Although Fafrowicz stated at the coroner's inquest that he tried to straddle the two boys, his ex-

planation of this statement at the trial shows that he did not turn toward the direction in which they were coming. Hence, he could not have confused or misled decedent into believing that his only means of escaping injury was to cross to the west side of the highway. On cross-examination, Fafrowicz stated:

"Q. Was that question asked of you and did you answer 'Headed the same way but he couldn't make the turn so he came on my side. At first I tried to straddle him but it was so close I swung to the right.' Do you remember answering that question?

"A. Yes, sir.

"Q. Making that statement. What do you mean by saying that you tried to straddle him?

"A. I suppose I was trying to go on the other side of him, let him get across. That was my point there.

"Q. You mean by straddling him—

"A. The two boys—straddle the two boys. That was my point.

"Q. You mean you intended to go between the two boys.

"A. That is what I was figuring on doing but after it was so close I just swung over to my right.

"Q. You meant first to turn to the left and instead you turned to the right.

"A. Yes, sir.

"Q. You had time to think about whether you wanted to straddle them or not, didn't you?

"A. I don't know no more.

"Q. Well, you thought about it, didn't you?

"A. A person is a pretty fast—

"Q. But not fast enough sometime.

"A. That is it.

"Q. By saying you meant to straddle the boys to get into clear did you mean you intended to turn to the left and go between the two boys?

"A. Yes, sir.

"Q. *And you saw you couldn't do it so you swung to the right.*

"A. Yes.

"Q. *What prevented you from turning to your left?*

"A. *The other boy was on the left.*" (Italics supplied.)

This testimony and other evidence makes it clear that Fafrowicz did not turn to his left. He said that he intended to do so but saw that he could not because the Anderson boy was on the left. Charles Cooper, a witness for plaintiffs, who was driving a car behind Fafrowicz, testified *that defendant driver did not swerve.* Thus, Fafrowicz's statement that he tried to straddle deceased, when viewed in the light of his explanation of what he meant and Cooper's testimony that he did not swerve, does not afford a basis for the conclusion that there were facts which may have justified deceased in believing that his only escape from danger was to cross to the west side of the highway. Since there was no showing of justification for the violation of either statute, there was no case to go to the jury (Demmer v. Grunke, 230 Minn. 188, 42 N. W. [2d] 1), unless, because of his age, his capacity to exercise care should have been submitted to it.

◼ The evidence shows that the reason why Robert failed to yield the right of way to the truck was either because he failed to keep a proper lookout and to heed Donald Anderson's warning or, if he did see the truck, because he failed to use the knowledge which his senses gave him. Cf. Carlson v. C. & N. W. Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L. R. A. (N. S.) 349, 113 A. S. R. 655. As he approached the highway, his vision to the right, all the way to the top of the hill, from which the truck was approaching, was unobstructed for a quarter of a mile. Even though he may not have seen the truck approaching, he must have known from experience that highway No. 65 was heavily traveled and that it was dangerous to enter or cross it without first taking proper precautions. When Donald Anderson shouted to him that there was a truck coming, instead of using his brakes, which he knew were in good working condition, he dragged his feet in an effort to stop. He was coming too fast to make the turn and went

straight across the road to the other side where the accident happened.

A child is not held to the same degree of vigilance that is required of an adult to constitute ordinary care, but he is bound to exercise the degree of vigilance that an ordinarily prudent boy of his age, mental capacity, and intelligence is capable of using. Twist v. Winona & St. P. R. Co. 39 Minn. 164, 39 N. W. 402, 12 A. S. R. 626; Borowski v. Sargent, 188 Minn. 102, 246 N. W. 540; Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665; McCarthy v. City of St. Paul, 201 Minn. 276, 276 N. W. 1; Hughes v. Minneapolis St. Ry. Co. 146 Minn. 268, 178 N. W. 605. In the case at bar, decedent was in good health and of average intelligence for his age. He had ridden bicycles for about two years around his former home in St. Paul and the school there, and he had ridden around the neighborhood of his home at Mora. He was a "pretty good" rider, and that very morning had shown Donald how the brakes worked, stopping the bicycle in a very short distance. He had ridden down the Hoffert driveway before and on the pavement of the highway. Not more than an hour before the accident he had told his mother, in response to her warning, that he would be careful. In our opinion, the evidence is compelling that decedent had the capacity and intelligence to know that it was dangerous to proceed swiftly down the private driveway onto the heavily traveled .highway and across it onto the wrong side without first looking for approaching vehicles, slowing down, or stopping. He had been warned of the approach of this very truck, notwithstanding which he coasted down the hill into its path without using his brakes. Under these circumstances, the court was justified in directing a verdict for defendants. Cf. Behr v. Schmidt, 206 Minn. 378, 288 N. W. 722; Boerner v. Wiemann, 206 Minn. 548, 289 N. W. 562. Where reasonable men can draw but one conclusion, the question of contributory negligence becomes one of law. Abbett v. C. M. & St. P. Ry. Co. 30 Minn. 482, 16 N. W. 266; Coffman v. Kummer, 179 Minn.

120, 228 N. W. 751. We hold that Robert's actions amounted to negligence as a matter of law. As was said in reference to a ten-year-old boy in Fezler v. Willmar & S. F. Ry. Co. 85 Minn. 252, 257, 88 N. W. 746, 748:

"So here the boy knew by his observations and experience, as well as by warning and admonition, that the railroad track was a dangerous place, and that trains were dangerous; and while it may have been a childish impulse that prompted him to run along beside the train in an attempt to keep up with it, that fact cannot excuse him from the responsibility of being in so perilous a place."

Cf. Twist v. Winona & St. P. R. Co. 39 Minn. 164, 39 N. W. 402, 12 A. S. R. 626.

The order of the trial court is affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

The trial resulted in a directed verdict for defendants based upon the ground that the failure of decedent to observe statutory regulations prescribed for the operation of vehicles on the highway conclusively established his contributory negligence barring recovery.

In directing a verdict for defendants, the trial court stated:

"* * * the evidence is conclusive in this case in the first place that *this boy failed to stop when approaching this trunk high-way*, and our Supreme Court has held that the word 'approaching' *in that statute* means 'in proximity to or within the limit of danger.' * * * this accident, from all the evidence, took place on the west side—*west half of this trunk highway, a place where the boy had no right to be.* * * * Now in view of those things it appears conclusively to the court that it would be error if we submitted this case to the jury, that it is a clear case of contributory negligence on the part of the boy * * *. The presumption that the boy exercised due care * * * has been clearly overcome. There is an-

other provision which requires stopping but this particular statute requires *yielding the right of way.*" (Italics supplied.)

Shortly after the accident, at the coroner's inquest, defendant driver testified that when he first saw that decedent couldn't make the right turn, he (defendant driver) first tried to "straddle" between the two boys by turning to the left to let decedent get across; that when he saw he could not do this, he then "swung to the right." At the trial, he testified that his only turn was to the right.

Because of his inability to make a right turn or to bring his bicycle to a stop, and perhaps because of his confusion resulting from defendant driver's turns, as above described, decedent traveled over to the west side of the highway in an attempt to pass in front of the truck. Fafrowicz testified that the truck was some 30 to 40 feet from the Hoffert driveway when he first observed the boys; that at the time they were just entering highway No. 65, with the decedent about 10 feet behind the Anderson boy; and that decedent was dragging his feet in an effort to stop his bicycle. There was nothing to obstruct defendant driver's view as he came down highway No. 65, and both boys must have been clearly within his sight. The point of contact was approximately 15 feet north of the north line of the Hoffert driveway. The truck came to a stop about 145 feet south of this point.

■ There was no stop sign at the point where the private driveway from the Hoffert residence enters highway No. 65. Consequently, there was no statutory duty on decedent to stop before entering it by virtue of § 169.20, subd. 3, which relates to entry onto through highways. See, § 169.01, subd. 35.

■ It may be conceded that decedent violated statutory traffic regulations, § 169.20, subd. 4, which requires the driver of a vehicle entering a highway from a private road to yield the right of way to all vehicles approaching on such highway; and § 169.18, subd. 1, which requires drivers to keep to the right of the center line of highways. The question then arises, did such violations constitute contributory negligence proximately contributing to the ac-

cident sufficient to bar plaintiffs' recovery as a matter of law? If not, the court's direction of a verdict on this issue constituted error requiring reversal, unless the record discloses evidence of contributory negligence as a matter of law under common-law principles.

■ By virtue of § 169.96, violation of the foregoing statute does not constitute negligence per se, but is only prima facie evidence of negligence. As stated in Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1, 3:

"A statutory violation constituting prima facie evidence of negligence prevails as a controlling evidentiary factor against the violator only so long as there is an absence of evidence tending to show a reasonable ground for such violation or only so long as there is no actual evidence to justify a reasonable assumption that such violation was not negligent under the circumstances and would therefore not reasonably endanger himself or any other person entitled to the protection of the act.

"The burden of producing such evidence of justification is upon the violator, but the moment such evidence appears from any quarter whatever the prima facie case against the violator not only ceases thenceforth to have any validity, but wholly vanishes from the litigation as an evidentiary factor, and thereupon the burden of going forward with the evidence shifts to the opposing litigant."

There is evidence here that decedent may have been confronted with a sudden emergency caused by the actions of defendant driver, as admitted by his own testimony in turning first to the left to attempt to "straddle" between the two boys, and, finding this impossible, immediately thereafter turning to the right. A jury might reasonably conclude from such testimony, which is set forth in detail in the majority opinion, that decedent's attempt to go to the west side of the highway in front of the truck was based upon his belief that this was the only way he could save himself from disaster, and that such factors constituted justification for his statutory violations. As stated in the Demmer case, "the moment such evidence appears from any quarter whatever the prima facie case

against the violator \* \* \* wholly vanishes from the litigation as an evidentiary factor, and thereupon the burden of going forward with the evidence shifts to the opposing litigant." I do not see how we can ignore this principle so recently enunciated, in the light of the above facts. I feel that the court should have submitted to the jury the question of decedent's contributory negligence under instructions that he was required to exercise only the degree of care which might reasonably be expected of a person of his age, intelligence, and experience, and if it found justification for his statutory violations under the doctrine expressed in the Demmer case that this issue be resolved in plaintiffs' favor.

The reasoning applied to the acts of decedent with reference to his statutory violations may be applied with equal force to any claim of contributory negligence under common-law principles. We have repeatedly held, in similar cases involving minors of decedent's age, that this issue should be submitted to the jury under proper instructions as to the consideration to be given to the age, intelligence, and experience of the child involved. Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1; Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665; McCarthy v. City of St. Paul, 201 Minn. 276, 276 N. W. 1; Middaugh v. Waseca Canning Co. 203 Minn. 456, 281 N. W. 818; Turenne v. Smith, 215 Minn. 64, 9 N. W. (2d) 409.

For the reasons outlined, I am unable to concur in the majority opinion.

FRANK T. GALLAGHER, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Thomas Gallagher.

MR. JUSTICE THEODORE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.